# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

JAMES SUGRUE vs. CONTRIBUTORY RETIREMENT APPEAL BOARD
& another.[1]

No. 96-P-0361.

Suffolk. December 9, 1997. - May 28, 1998.

Present: GREENBERG, LAURENCE, & LENK, JJ.

*Contributory Retirement Appeal Board. Public Employment,* Accidental disability retirement. *Retirement. Proximate Cause. Limitations, Statute of.*

A decision of an administrative magistrate of the Contributory Retirement Appeal Board, denying a police officer accidental disability retirement benefits, was not based on an error of law and was supported by substantial evidence, where the only non-time-barred disability claim presented was of cumulative stress resulting from conflicts with superiors, and where the officer did not demonstrate that his disability resulted from his exposure to an "identifiable condition" not common to all or a great many occupations while in the performance of his duties. [4-7]

CIVIL ACTION commenced in the Superior Court Department on December 6, 1994.

---

[1]Public Employee Retirement Administration.

The case was heard by *Peter M. Lauriat*, J.

*Paul T. Hynes* for the plaintiff.

*Kathryn B. Palmer*, Assistant Attorney General, for the defendants.

LAURENCE, J. James Sugrue claimed to have suffered severe emotional distress as a result of participating in or witnessing a wide array of grisly, disturbing, and traumatic incidents in the early part of his career as a city of Cambridge police officer (1975-1983), which included coping with physical assaults and shootings. Subsequently, in the latter part of his career (1983-1992), he became severely depressed by reason, he alleged, of harassment and discrimination against him by fellow officers and his supervisors, the Cambridge chief of police and city manager, who isolated him and repeatedly broke promises made to him about promotion.

A psychiatrist advised him in 1990 that he was suffering from "job-related stress." Following a paid medical leave in 1990, he returned to work in 1992 but (he maintained) could not handle the severe anxiety and emotional stress that he continued to experience from his relationship with his superiors. After Sugrue entered a hospital psychiatric emergency ward and obtained a note from his personal psychiatrist explaining to his employer that he could not "return to police duties at this time," his employment was terminated by the city in September, 1992.

Sugrue applied thereafter to the Cambridge retirement board (CRB) for accidental disability retirement benefits. His application recited that his claim was based on a permanent psychological disability grounded in anxiety and depression which was not occasioned by a single event, but rather which reflected "a deterioration type of disability" as a result of a series of events. Two of the three medical panel psychiatrists who examined him pursuant to CRB's request certified to his disability; the third member deemed him not disabled. Based on the panel majority report, CRB voted to grant his application in July, 1993.

In August, 1993, the Public Employee Retirement Administration (PERA), after reviewing the matter pursuant to G. L. c. 32, § 21(1)(*d*), rejected Sugrue's application on the ground that it had been wrongfully approved "upon unlawful procedure." PERA identified that unlawful procedure as lack of a positive certification from his personal physician as to the permanency of the disability, and lack of substantial evidence to support a finding that his incapacity might have resulted from a job-

related personal injury. After Sugrue's timely appeal to the Contributory Retirement Appeal Board (CRAB), an administrative magistrate to whom the appeal was assigned affirmed PERA's decision denying Sugrue's application.

The magistrate agreed with PERA that Sugrue did not carry his burden of demonstrating that his psychiatric condition, even assuming it to be permanently disabling, was the natural and proximate result of a "personal injury sustained or a hazard undergone . . . while in the performance of . . . his duties," as required by G. L. c. 32, § 7(1). The magistrate relied upon the principle of *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479 (1985), which held that a claim premised on the theory advanced by Sugrue — a disability produced by gradual deterioration over time — can succeed only upon proof that the disability resulted from the exposure of the claimant by his employment to "an identifiable condition" which is not common to all or a great many occupations. *Id.* at 485 (citation omitted). The magistrate noted that both psychiatrists who had examined Sugrue and opined that he was disabled had stressed as the most pertinent cause of disability Sugrue's "humiliating" interactions and disputes with his supervisors, particularly repeated broken promises about promotion.[2] Based on those reports and her own evaluation of the medical and non-medical evidence in the record, the magistrate determined that Sugrue's conflicts with his superiors did not constitute an identifiable condition uncommon to all or a great many occupations within the meaning of *Blanchette* — a case which also involved a claimant whose principal job-related difficulty was his inability to get along with people, manifested by frequent problems and arguments with supervisors. 20 Mass. App. Ct. at 484-485.

The magistrate also mentioned two additional and independent reasons for denial. First, she noted that the term "personal injury," as used in G. L. c. 32, § 7(1), is, under the teaching of

---

[2]One of the medical panel majority who agreed that Sugrue was disabled (Dr. Sederer) did so in part on the basis of Sugrue's having furnished undated written descriptions of seven "violent, catastrophic, traumatic" situations Sugrue had allegedly experienced at some early point in his police career. The magistrate rejected this conclusion as being dependent on events that did not in fact form the basis of Sugrue's disability application (which identified the humiliating relationship and conflicts with his superiors as the prime source of his distress), and also as being temporally irrelevant to the onset of Sugrue's inability to work, having all occurred at least seven years prior to the onset of his psychiatric problem.

numerous cases, to be given the same meaning as the identical term used in the workers' compensation act, G. L. c. 152, § 1(7A), which specifically excludes from the definition of "personal injury" (by virtue of a 1986 amendment, St. 1986, c. 662, §§ 6 & 55) any "mental or emotional disability arising principally out of a bona fide, personnel action" not amounting to the intentional infliction of emotional harm. Since the repeated failures of his supervisors to promote Sugrue (which he did not challenge as wrongful) constituted bona fide personnel actions and since Sugrue had failed to prove any intent to inflict emotional harm on their part, the magistrate determined that Sugrue had failed to establish a compensable "personal injury."

The magistrate finally opined that the application must be denied because Sugrue had failed to satisfy the notice provision of G. L. c. 32, § 7(1), which requires that the injury sustained occur within two years of the filing of the application or, if occurring earlier, that written notices of injury be filed with the appropriate retirement board within ninety days of each occurrence. Sugrue, having filed no notices regarding traumatic events or personnel conflicts prior to his 1992 application, was confined to the incidents that had occurred within two years of his application. All of those stressors related to his personnel problems, which could not support his claim under the *Blanchette* analysis.[3]

CRAB subsequently summarily affirmed the magistrate's decision, adopting her findings and conclusions as its own. On Sugrue's appeal to the Superior Court, CRAB's decision was affirmed on all of the grounds identified by the magistrate. We, too, affirm, without having to reach the issue whether the definition, with exceptions, of "personal injury" in G. L. c. 152 is to be read into G. L. c. 32.[4] The Superior Court properly upheld both CRAB's application of the statutory two-year limitation

---

[3]The magistrate also premised denial independently on the failure of Sugrue's personal physician to state affirmatively that the disability was permanent, but that issue was not addressed by the Superior Court and is not pressed here.

[4]Sugrue's principal appellate challenge is to the magistrate's and Superior Court's reliance, in part, on the "bona fide personnel action" exception to the definition of "personal injury" as appearing in the workers' compensation statute, G. L. c. 152, § 1(7A). He argues not only that c. 152 does not apply to police officers like himself, but also (invoking a common maxim of statutory construction) that when the exception was inserted into c. 152 in 1986,

period and its determination that Sugrue had failed to sustain his burden under G. L. c. 32, § 7(1), of demonstrating that his disability was the direct result of the cumulative effects of his employment or in establishing the necessary nexus between his condition and his employment.

Assuming, arguendo, that Sugrue's condition is not excepted from c. 32, the magistrate, CRAB, and the Superior Court were correct in adopting the rationale of *Blanchette* as the predominant basis for denying Sugrue's application.[5] Most fatally, Sugrue's position falls before the magistrate's and CRAB's determination that the only non-time-barred disability claim Sugrue presented — the cumulative stress created by his humiliating encounters and job conflicts with his superiors — was not an "identifiable condition . . . that is not common and necessary to all or a great many occupations." *Blanchette* v.

---

c. 32 was not similarly amended. See, e.g., *Tilcon Mass., Inc.* v. *Commissioner of Rev.*, 30 Mass. App. Ct. 264, 269 (1991). Since the denial of Sugrue's application is sustainable on other grounds, see discussion *infra*, we need not decide this issue. We observe, however, that it has long been recognized — both well before and after 1986 — that the language of G. L. c. 32, § 7, particularly in regard to the concept of "personal injury," should be interpreted in harmony with c. 152. See *Baruffaldi* v. *Contributory Retirement Appeal Bd.*, 337 Mass. 495, 500-501 (1958); *Zavaglia* v. *Contributory Retirement Appeal Bd.*, 345 Mass. 483, 486 (1963); *Adams* v. *Contributory Retirement Appeal Bd.*, 414 Mass. 360, 361 n.1 (1993); *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 482; Locke, Workmen's Compensation § 623(3) & n.1 (2d ed. 1981). Other than Sugrue's arguments based upon general canons of statutory construction and the distinguishable situation in *Vaughan* v. *Auditor of Watertown*, 19 Mass. App. Ct. 244, 246-247 (1985) (involving the interplay not of the identical terms "personal injury," but rather of two different, "unduly ambiguous," and previously unconstrued provisions of G. L. c. 32, § 94, and G. L. c. 41, § 111F, that the court was constrained to resolve while noting the matter was "not free from doubt"), he advances no policy reasons for rejecting the traditional identity of the "personal injury" concepts in c. 32 and c. 152. Compare the discussions in the authorities cited earlier in this footnote.

[5]Our review proceeds under a narrow and highly deferential standard which Sugrue does not explicitly recognize. We may set aside or modify a CRAB decision only if, after giving due regard to CRAB's expertise in applying c. 32 to a variety of factual situations, the appellant has convincingly demonstrated that CRAB's decision was, considering the entirety of the record — including non-medical as well as medical facts, and recognizing that the probative value of expert evidence is for the magistrate, and later CRAB, to accept or reject — based upon an error of law or wholly unsupported by substantial evidence. Sugrue has failed to make that demonstration. See *Blanchette*, 20 Mass. App. Ct. at 483, 487-488; *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 252 n.6, 254-258 (1996).

*Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 487 (citations omitted). As *Blanchette* teaches, job conflicts and arguments with superiors and subordinates, including a series of incidents over several years creating feelings of "persecution" and unfair treatment and ultimately a diagnosed mental illness, do not "distinguish [the applicant's] occupation from a wide variety of other occupations where employees face similar pressures and demands." 20 Mass. App. Ct. at 480, 484-485, 487. Cf. *Adams* v. *Contributory Retirement Appeal Bd.*, 414 Mass. 360, 366-367 (1993), and cases cited (discussing distinction between physical activities unique to job, contrasted with those required in a "wide variety of other occupations"). Under *Blanchette, supra* at 484, such "long standing problems in [the plaintiff's] ability to get along with people," do not, standing alone, satisfy the "cumulative effects" hypothesis that underlay Sugrue's claim.

In exercising our limited power of review in such cases (see note 5, *supra*), we are especially cognizant of (a) the applicant's clear burden to establish the requisite causal nexus; (b) the strictness of the causation standard imposed by c. 32; (c) the ultimate discretion belonging to CRAB on the question whether causation has been proved; (d) CRAB's unfettered discretion to reject medical panel certification and to "completely discount the testimony of one expert and rely exclusively on [another]," *Robinson* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 634, 639 (1985) (which the magistrate did here by expressly rejecting the conclusion of the majority of the medical panel and implicitly adopting the opinion of the minority member, Dr. Rosenblatt); and (e) the impropriety of a reviewing court's substitution of its judgment for that of the expert agency when there is evidentiary support in the record for the agency's conclusion.[6] In such a constrained appellate environment, we are unable and unwilling to gainsay CRAB's rejection of Sugrue's contention that his psychiatric condition was the natural and proximate result of a "personal injury" he had sustained by reason of exposure to an uncommon identifiable condition while

---

[6]See generally for these several propositions the authorities cited in notes 4 and 5, *supra*, and, additionally, *McCarthy* v. *Contributory Retirement Appeal Bd.*, 342 Mass. 45, 48-49 (1961); *Wakefield Contributory Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 352 Mass. 499, 502-503 (1967); *Woolfall's Case*, 13 Mass. App. Ct. 1070, 1070-1071 (1982); *Campbell* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 1018, 1019 (1984).

in the performance of his duties. On this record, CRAB was entitled and empowered to reach the opposite conclusion.

*Judgment affirmed.*