PLYMOUTH COUNTY RETIREMENT BOARD *vs.* CONTRIBUTORY
RETIREMENT APPEAL BOARD & another.[1]

No. 02-P-96.

Suffolk. June 5, 2003. - December 4, 2003.

Present: GREENBERG, LAURENCE, & CYPHER, JJ.

*Practice, Civil,* Appeal. *Retirement. Public Employment,* Accidental disability
retirement. *Contributory Retirement Appeal Board. Administrative Law,*
Proceedings before agency. *Words,* "Personal injury."

A Superior Court judge erred in vacating a decision of the Contributory
Retirement Appeal Board awarding a municipal employee accidental dis-
ability retirement benefits, where stresses in his employment as the
superintendent of a town's highway department that proximately caused
his major depression, including lack of support and cooperation and a
hostile environment, exposed him to an identifiable condition that was not
common and necessary to all or a great many occupations and thereby
constituted personal injury compensable under G. L. c. 32, § 7. [118-121]

CIVIL ACTION commenced in the Superior Court Department on
April 25, 2000.

The case was heard by *Joseph M. Walker, III,* J., on a motion
for judgment on the pleadings, and entry of an amended judg-
ment was ordered by *Elizabeth M. Fahey,* J.

*Richard Dailey (Amy L. Hanson* with him) for the defendants.

*Michael Sacco* for the plaintiff.

GREENBERG, J. The defendant Donald E. Newman appeals
from a Superior Court judgment vacating a decision of the
Contributory Retirement Appeal Board (CRAB) that awarded
him accidental disability retirement benefits, G. L. c. 32, § 7(1).
Newman had sought benefits because of major depression,
engendered by his work in the winter of 1995-1996. December,

[1] Donald E. Newman.

1995, was a particularly snowy month in West Bridgewater (town), and employees of the highway department, of which Newman was the superintendent, had to expend extra hours to keep the town's streets open and sanded. Conflicts arose between Newman and members of his highway crew, and between Newman and at least one other town official. The last incident occurred on January 4, 1996. Newman never returned to work after that incident. He then sought accidental disability retirement.

A regional medical panel consisting of three psychiatrists evaluated Newman and certified to the plaintiff, the Plymouth County retirement board (board), that he was unable to perform the duties of his job; that his disability was likely to be permanent; and that his disability was the natural and proximate result of his "reported work stresses." On May 28, 1998, the board rejected Newman's application for accidental disability retirement on the ground that the incidents were "not sufficient to warrant an accidental disability retirement." Newman appealed to CRAB pursuant to G. L. c. 32, § 16(4). There the matter was heard de novo, see *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 461-462 (1985), before an administrative magistrate at the Division of Administrative Law Appeals. Based on her specific findings of fact, the magistrate recommended that the board's decision to deny benefits be affirmed. Newman filed objections to the administrative magistrate's decision. Incorporating the magistrate's findings as its own, but disagreeing with her conclusions, CRAB decided that those findings, in conjunction with the affirmative certification by the medical panel, supported an award in Newman's favor.

The board sought judicial review of CRAB's decision in the Superior Court pursuant to G. L. c. 30A, § 14. Acting on the board's motion for judgment on the pleadings, the motion judge vacated CRAB's decision. He ruled that Newman, as matter of law, was not entitled to benefits and remanded the matter to CRAB "for proceedings consistent with this opinion." A second

Superior Court judge, at Newman's request, vacated the first judge's order and reinstated the order as of a later date.[2]

1. There is a threshold question not raised by either party. The language of the judgment suggests that this appeal is interlocutory in nature. Prior to the motion judge's ruling on the board's motion on the pleadings, the board argued, among other things, that a remand to CRAB was necessary because CRAB failed to provide sufficient reasons for its rejection of a particular finding concerning one of the three incidents that triggered Newman's "break-down" in 1996. Rejecting this, the motion judge found that "Newman is not entitled to compensation for any of the incidents described in his application for [accidental disability retirement] benefits." We are handicapped — and so far as appears from the record, so are the parties — by not having an explanation of why a remand to CRAB was necessary. We need not, however, continue the tortured procedural history of the case because it appears that the motion judge "did dispose of the case fully and finally, and that the appeal is therefore a viable one." *Seymour's Case*, 6 Mass. App. Ct. 935 (1978). *Carnute's Case*, 10 Mass. App. Ct. 814, 815 (1980) (order may be treated as final disposition of the case where "nothing remained for the [agency] to do except the ministerial task of entering a decision as the judge had ordered").

2. The undisputed facts are as follows. Newman began working for the town highway department in 1977 and steadily rose in rank. In 1982, he was appointed superintendent of the highway department. In his application for accidental disability retirement, he described his personal injury as "[m]ajor depression exacerbated by stresses at work including lack of support and cooperation and a hostile environment." So far as appears, he specifically cited three separate events between December, 1995, and January, 1996. The first occurred in early December. His crew abandoned their duties during a difficult major snowstorm, leaving him alone for about sixteen hours "to fight

---

[2]The record appendix does not contain a copy of Newman's motion to vacate. In his appellate brief, Newman states that the original order was vacated because he was not notified of the judge's decision. Because the substance of the amended judgment is identical to the original judgment, we need not distinguish between them.

the effects of the storm." On December 13, Newman was present during the discovery of his neighbor's body, who had hanged himself inside his home. Newman related the tragic event to his staff the next day. Fifteen days later, on December 28, 1995, he was startled to see a hangman's noose on the time clock at his office. He interpreted this as a taunt by a disgruntled employee. Upset, he instructed one of his staff to remove it. In a bizarre retort, the worker refused, claiming that it was "not a legal hangman's noose" because it did not have "thirteen rings." Newman then ripped the noose from its mooring and threw it away. The third and final straw for Newman occurred on his final day of work, January 4, 1996. About 4:30 A.M. that day, Newman was called out to inspect a busy intersection that the police feared had become unsafe because of freezing temperatures. After viewing the site, he informed a police officer on site that sand and salt would be ineffective because of the extremely low air temperature. As a temporary alternative, he suggested the officer place his cruiser in the middle of the intersection to deter motorists from speeding. That solution, to put it mildly, did not appeal to the police officer. Next, the chairman of the town board of selectmen called Newman and ordered him to salt and sand the intersection. Newman subsequently requested that a "hot load" solution be obtained from the State highway department to get the job done. Newman was conversing with an administrative assistant to the board of selectmen on this topic when one of his crew berated him for spurning the chairman's direct order. That, apparently, was enough for Newman, who, reduced to tears, told the assistant that "he couldn't take it any longer."

In addition to these findings, the magistrate also found that on two occasions in 1991, Newman had disciplined several employees for insubordinate conduct and that the board of selectmen overturned his disciplinary action in both instances.

Based on these largely undisputed facts, the magistrate concluded that Newman had not only failed to meet his burden of proof to show a "personal injury sustained or hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time," but had also failed to "demonstrate that his employment as the Highway

Superintendent exposed him to an identifiable condition that was not common and necessary to all or a great many occupations."[3] She fobbed off the three incidents as "job conflicts with some of the members of his crew and with some police officers." In contrast, CRAB concluded that "the non-medical facts as found support an award of benefits." In his ultimate conclusion, and analyzing the same facts, the Superior Court judge agreed with the magistrate. In this view, the judge erred. The magistrate's ultimate conclusion that the interpersonal conflicts described by Newman did not rise to the level of personal injury covered by G. L. c. 32, § 7(1), amounts to an error of law.

"[I]t is settled that the term 'personal injury' as it appears in G. L. c. 32, § 7, should be interpreted similarly to the same term [in the worker's compensation statute,] G. L. c. 152." *Adams* v. *Contributory Retirement Appeal Bd.*, 414 Mass. 360, 361 n.1 (1993). "[T]o succeed on his application, the [claimant] had to prove one of two hypotheses: that his disability stemmed from 'a single work-related event or series of events,' *Kelly's Case*, 394 Mass. 684, 688 (1985); or, if the disability was the product of gradual deterioration, that 'the employment [had] exposed [the claimant] to an "identifiable condition . . . that is not common and necessary to all or a great many occupations." ' *Ibid.*, quoting from *Zerofski's Case*, 385 Mass. 590, 595 (1982)." *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 485 (1985) (footnote omitted).

In arriving at its conclusion in this case, CRAB considered whether Newman's disability arose from an "identifiable condi-

---

[3]It is unclear why Newman attempted to pursue accidental disability retirement benefits under the latter theory where he identified a series of specific stressful events occurring in December of 1995 and January of 1996 that the magistrate found had occurred, and that the medical panel opined were such as might be the natural and proximate cause of his injury. Indeed, Newman apparently sought worker's compensation benefits under this theory, as the record contains the lump sum settlement papers from his workers' compensation claim stating that he "suffered a depression as a result of specific work related incidents." "[W]hen an injury is attributable to a specific work-related event, . . . or a series of such events, rather than to gradual wear and tear, the employee need not show that the employment exposed him or her to an unusual risk greater than that experienced by the general public." *Kelly's Case*, 394 Mass. 684, 688 (1985).

tion . . . that is not common and necessary to all or a great many occupations," *Sugrue* v. *Contributory Retirement Appeal Bd.*, 45 Mass. App. Ct. 1, 5 (1998), quoting from *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 487, and concluded that it did. In reviewing CRAB's decision, the motion judge was required to give "consideration to CRAB's experience in the area and its function in applying the controlling statute, necessarily on a case-by-case basis, to a difficult area of the law as well as to the agency's responsibility to differentiate between the special requirements for other benefits, such as ordinary disability retirement pursuant to G. L. c. 32, § 6(1)." *Adams* v. *Contributory Retirement Appeal Bd.*, 414 Mass. at 367. It appears that the motion judge did not give CRAB's decision the deference that it deserved.

As stated by the court in *Blanchette*, recovery of accidental disability benefits for mental incapacity due to a gradual deterioration stemming from an identifiable condition not shared by many occupations, "might occur, for example, in occupations involving constant exposure to life threatening situations or to continual traumatic or depressing events. However, it should be noted that the 'identifiable condition' spoken of in *Kelly's Case*[, *supra*,] need not necessarily be unique to the occupation in order to warrant a recovery. . . . The key, in a case involving G. L. c. 32, § 7(1), once the physical or mental disability is established, is proof that the identifiable condition at work is an efficient cause of the disability." *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 487 n.7.

Unlike the claimant in *Blanchette*, 20 Mass. App. Ct. at 484, there was no evidence that Newman had any preexisting mental or emotional illness. Newman's own psychiatrist opined that "the incidents at work were the proximate cause of the decompensation and that he cannot return to that job." In addition, the regional medical panel opined that "more likely than not, the patient's symptoms are related to his reported work stresses" and noted that "other factors or conditions which might account for the patient's onset and severity of symptoms do include the friend's suicide and the incident reported about the noose which was subsequently placed in the patient's environment."

In combination with these medical facts, the facts found by the magistrate supported CRAB's determination. CRAB properly could conclude from the facts found that "[t]he incidents set forth in the Findings of Fact go well beyond those which are common to all or a great many occupations." In reaching a conclusion that differed from the magistrate's, CRAB did not have to reject any of the facts found by the magistrate. Contrast *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. 85, 90-93, 100-102 (1982). In arriving at its conclusion that "[i]t is clear that barriers were placed in front of Mr. Newman in his attempts to do his job," CRAB reasonably could have determined that the findings of fact regarding the three incidents occurring in December of 1995 and January of 1996 showed that Newman was indeed working in an employment environment where the authority he needed to perform his job had been so thoroughly eroded as to permit all levels of his subordinate staff to believe that they could engage in behavior that was objectively unreasonable, thereby removing this case from the realm of ordinary work stress or conditions common to all or a great many occupations. *Sugrue* v. *Contributory Retirement Appeal Bd.*, 45 Mass. App. Ct. at 5.

There is no question that the line between compensable injuries under the statute and those that are the result of "mere 'wear and tear' " or steady deterioration in the workplace is a delicate one. *Zerofski's Case*, 385 Mass. 590, 594-595 (1982). In *Albanese's Case*, 378 Mass. 14, 18 (1979), the court determined as matter of law, on similar facts, that undermining the authority of a supervisor, which led to his disability, created a compensable injury under G. L. c. 152. The court rejected the argument that difficulties in the statutory language of G. L. c. 32, § 7(1), and G. L. c. 152, § 26, vitiated the analogy. See *Adams* v. *Contributory Retirement Appeal Bd.*, 414 Mass. at 361 n.1. In this context, the tests for compensable worker's compensation and accidental disability benefits are, therefore, indistinguishable. In *Albanese, supra,* the court held that the plaintiff, who had an emotional breakdown after being caught in repeated conflicts between his employer and his crew, qualified for an accidental disability under G. L. c. 152. Based on findings of an administrative judge, the reviewing board found a

causal nexus between the plaintiff's working conditions and his emotional disorder. *Ibid.*

Likewise, in the instant case, Newman's claims are not "long-standing problems in [his] ability to get along with people," *Blanchette,* v. *Contributory Retirement Appeal Bd.,* 20 Mass. App. Ct. at 484, nor were they a series of incidents over several years creating feelings of persecution and unfair treatment. Contrast *Sugrue* v. *Contributory Retirement Appeal Bd.,* 45 Mass. App. Ct. at 5-6. CRAB reasonably could conclude that Newman's crew's failure to abide by his denial of their request to leave the job site during the snowstorm, which left him alone to complete the task, went far beyond an ordinary "job conflict" or "argument . . . with subordinates," as concluded by the motion judge. Considered in context with the other evidence, CRAB could reasonably view Newman's claim as compensable under the statute.

We take into account all of the circumstances just mentioned as well as our traditional deference, where the facts and law permit, to CRAB's discretion in "implementing the statutory scheme it has been empowered by the Legislature to oversee," a principle which reviewing courts ought to heed. *Hotchkiss* v. *State Racing Commn.,* 45 Mass. App. Ct. 684, 689 (1998).

The amended judgment of the Superior Court vacating CRAB's decision to award accidental disability retirement benefits, and remanding the case to CRAB, is reversed. A new judgment shall enter affirming CRAB's decision.

*So ordered.*