NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-741

MICHAEL SIBLEY

vs.

CONTRIBUTORY RETIREMENT APPEAL BOARD & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Michael Sibley, sought accidental disability retirement benefits after suffering two torn rotator cuffs, which he attributed to his employment as a truck driver and heavy laborer for the town of Northfield.  Sibley appeals from a Superior Court judgment affirming the decision of the Contributory Retirement Appeal Board (CRAB), which found that he was not entitled to a regional medical panel examination (examination) and denied his application for accidental disability retirement benefits.  The sole issue raised on appeal is whether CRAB was correct in determining that Sibley was ineligible for accidental disability retirement benefits and

_____

[1] Franklin Regional Retirement Board.

therefore not entitled to an examination.[2]  After careful review

of the record, we affirm CRAB's decision.

Background.  The facts in this case are undisputed.  Sibley

began his employment as a truck driver and laborer for the

Northfield Highway Department in 1999.  He performed a wide

variety of duties including driving vehicles; removing snow and

ice; lifting heavy objects such as bricks, cinder blocks, and

catch basin covers; and conducting preventative maintenance on

equipment.  His job description specifically required that he be

able to "perform strenuous labor work" and noted that most work

is performed outside, with "frequent exposure to adverse weather

conditions and with seasonal exposure to unpleasant working

conditions related to outdoor and/or maintenance functions."  In

2001, Sibley had begun to experience pain in his right shoulder,

_____

[2] The parties proceeded before the Division of
Administrative Law Appeals and CRAB on the understanding that
the plaintiff had the duty to present a prima facie case of
entitlement to disability retirement benefits to obtain medical
panel review of his claims.  In light of this, the plaintiff
reasonably does not contest the existence of such a requirement.
We express no view on this procedure.  See 840 Code Mass. Regs.
§ 10.08(1) (1998) ("Except as provided in 840 CMR 10.09, upon
receiving an application for disability retirement, the
retirement board shall petition [the Public Employee Retirement
Administration Commission] to schedule a medical examination of
the member by a regional medical panel"); 840 Code Mass. Regs.
§ 10.09(2) (1998) ("At any stage of a proceeding on an ordinary
or accidental disability retirement application the retirement
board may terminate the proceeding and deny the application if
it determines that the member cannot be retired as a matter of
law").

2

which he did not report to his supervisors at that time. Five years later, in 2006, he was diagnosed with a massive and irreparable tear of his right rotator cuff. By 2010, he had started receiving medical treatment for rotator cuff tears in both shoulders, and, by 2013, both tears had been diagnosed as massive and irreparable.

In 2013, Sibley filed a workers' compensation claim with the Department of Industrial Accidents (DIA) claiming that his shoulder injuries were caused by the cumulative stress of his work, specifically lifting heavy objects and shoveling. He was evaluated by a doctor on behalf of the workers' compensation insurer, who agreed with the diagnosis made by Sibley's treating physician and opined that Sibley's injuries were "more likely than not" causally related to his repetitive work over the years. In March 2014, Sibley began to receive workers' compensation benefits, which continued until he settled with the DIA in August 2016 for a lump-sum payment.

Around this time, Sibley applied to the Franklin Regional Retirement Board (retirement board) for accidental disability retirement. He sought benefits on the grounds that he was unable to perform the essential duties of his job and was disabled because of rotator cuff tears in both his left and right shoulder, which he suffered while performing his duties

3

and were caused by the cumulative stress of his heavy work activities. His application was supported by a statement from his treating physician, opining that his left shoulder injury was caused by chronic compensatory overuse. The retirement board denied Sibley's application in February 2015, finding that the injury to his right shoulder occurred between 2001 and 2002 and was therefore time-barred. As to his left shoulder, the retirement board found that it was an overuse injury and not compensable because Sibley's employment responsibilities did not "expose him to an identifiable condition that is not common to all or a great many occupations." He appealed the denial to the Division of Administrative Law Appeals (DALA), which reversed the retirement board's decision and ordered that Sibley be given a regional medical panel examination. The retirement board appealed the DALA decision to CRAB and, in May 2023, CRAB reversed the DALA decision. CRAB concluded that Sibley did not have an "identifiable condition" and that his injury was instead the result of gradual wear and tear. Sibley appealed the CRAB decision to the Superior Court, and a judge affirmed the decision in May 2024. This appeal followed.

Discussion. 1. Standard of review. "It is well established that judicial review of a CRAB decision under G. L. c. 30A, § 14, is narrow." Murphy v. Contributory Retirement

4

Appeal Bd., 463 Mass. 333, 344 (2012). "It is not our province to determine whether the CRAB decision is based on the weight of the evidence" (quotations omitted). Id., quoting Retirement Bd. of Salem v. Contributory Retirement Appeal Bd., 453 Mass. 286, 289 (2009). "We set aside a decision by CRAB only where it is legally erroneous or unsupported by substantial evidence." Murphy, supra. See G. L. c. 30A, § 14 (7). "While we review questions of law de novo, we nonetheless 'typically defer[] to CRAB's expertise and accord[] great weight to its interpretation and application of the statutory provisions it administers.'" Young v. Contributory Retirement Appeal Bd., 486 Mass. 1, 5 (2020), quoting Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 604 (2019). Furthermore, "[w]here an agency's interpretation of a statute is reasonable, the court should not supplant it with its own judgment." Genworth Life Ins. Co. v. Commissioner of Ins., 95 Mass. App. Ct. 392, 396 (2019), quoting Boston Retirement Bd. v. Contributory Retirement Appeal Bd., 441 Mass. 78, 82 (2004). We "give no special weight to the Superior Court's decision." Hunter v. Contributory Retirement Appeal Bd., 80 Mass. App. Ct. 257, 260 (2011).

2. Prima facie case. In order to qualify for accidental disability benefits, Sibley was required to show (1) his

5

inability to perform the essential duties of the position; (2) that his disability is likely to be permanent; and (3) his disability is a natural and proximate result of a "personal injury" or "hazard undergone" while performing work duties.  See 840 Code Mass. Regs. § 10.04(1) (1998).  See also G. L. c. 32, § 7 (1).  The parties agree that the question raised in this appeal is whether Sibley's application satisfied the third factor, i.e., causation.  The method of proving causation depends on the type of injury alleged.  For injuries resulting from a specific incident or a series of incidents, an applicant must show the incident occurred while performing the duties of their employment.  See Murphy, 463 Mass. at 350-351.  For chronic injuries of the type Sibley alleged, causation can be established by proving that his disability resulted from an identifiable condition at work that is "not common and necessary to all or a great many occupations" (citation omitted).  Adams v. Contributory Retirement Appeal Bd., 414 Mass. 360, 365 (1993).  Under either theory, Sibley must satisfy the strict causation standard that his employment was a "natural and proximate cause of [his] incapacity" (citation omitted).  Blanchette v. Contributory Retirement Appeal Bd., 20 Mass. App. Ct. 479, 485 (1985).

Sibley, through physician diagnoses, alleged that his injury was the result of chronic overuse due to his heavy work activities. Under this theory of causation, Sibley was required to show that his employment "exposed [him] to an 'identifiable condition . . . that is not common and necessary to all or a great many occupations.'" Plymouth County Retirement Bd. v. Contributory Retirement Appeal Bd., 60 Mass. App. Ct. 114, 118-119 (2003) (Plymouth County), quoting Kelly's Case, 394 Mass. 684, 688 (1985). An "identifiable condition" not shared by a great many occupations, could include exposure to hazardous substances, such as asbestos, or life threatening or traumatic events. See Blanchette, 20 Mass. App. Ct. at 487 n.7. An identifiable condition could also include movements that are not common among human activities and many jobs.[3] See Adams, 414 Mass. at 366. In other words, Sibley was required to show that his injuries did not result from ordinary wear and tear, but rather resulted from specific factors or conditions unique to his employment as a truck driver and heavy laborer. The key factors in distinguishing an identifiable condition from conditions common to a great many occupations are the "frequency

---

[3] Sibley does not claim that he was exposed to a hazardous chemical or substance, but rather claims that repetitive movements such as shoveling and heavy lifting of objects resulted in his shoulder injuries and permanent disability.

and intensity of activity compared to other occupations" (citation omitted).  See id. at 365.

Here, there is no dispute that Sibley's duties included frequent lifting of objects in excess of fifty pounds, often in inclement weather, and that his job required a fair amount of shoveling -- both activities which undoubtedly caused strain to his shoulders.  Sibley failed to allege, however, any special frequency or intensity of the work he performed as compared with other occupations where strenuous labor is performed.  He points to the fact that his job description required that he be able to "perform strenuous labor work" as evidence that his job exposed him to more frequent lifting than other occupations.  His duties were unquestionably important and physically demanding, but such a requirement does not by itself transform the general duty of lifting heavy objects into an identifiable condition.  In finding that Sibley's performance of his employment duties did not qualify as an identifiable condition, CRAB noted that it has consistently held that heavy labor, standing alone, is a hazard common to many occupations.  The CRAB decision also found Sibley's job duties comparable to those of workers who perform farm labor, construction, water and infrastructure maintenance, waste disposal, and firefighting.  We conclude that CRAB's

8

decision was neither legally erroneous nor unsupported by substantial evidence.

Sibley argues that CRAB's interpretation frustrates the purpose of G. L. c. 32, § 7 (1), and that it guarantees no manual laborer injured because of the nature of the work will ever be entitled to public accidental disability retirement benefits. We disagree.

First, we acknowledge that disabilities caused by a specific incident or series of incidents are not excluded by what is determined to be a hazard undergone created by an "identifiable condition." See Plymouth County, 60 Mass. App. Ct. at 118. Second, nothing about our conclusion today forecloses laborers from obtaining accidental disability benefits for chronic injuries under G. L. c. 32, § 7 (1). To obtain benefits, however, laborers must first allege specific circumstances of their employment that can be differentiated from many other occupations, and which have a causal link to their disabilities. See id. at 118-119. This could include specific movements unique to the position -- for example, repeatedly performing a lift in a specific way that directly results in a specific injury over a period of time. Merely alleging that an injury is caused by general job duties common to many other occupations does not suffice. Furthermore, we

9

note that the purpose of G. L. c. 32, § 7 (1), is to compensate personal injuries incident to employment, rather than to create a system for health insurance for injuries that occur naturally because of wear and tear. See Adams, 414 Mass. at 366. Enlarging the criteria for recovery "when the injury stems from a long period of common movements . . . would tend, for all practical purposes, to turn G. L. c. 32, § 7 (1), into a 'scheme for health insurance'" (citation omitted). Id.

Next, Sibley argues CRAB made an error of law in interpreting the term "personal injury" under G. L. c. 32, § 7 (1). The Supreme Judicial Court has indicated that "personal injury," for purposes of determining what qualifies as an injury under G. L. c. 32, § 7 (1), "should be interpreted similarly to the same term in G. L. c. 152." Adams, 414 Mass at 361 n.1. Therefore, Sibley argues, CRAB should look to the DIA's interpretations of what qualifies as a personal injury under G. L. c. 152, § 1 (7A), to inform its own interpretation of G. L. c. 32, § 7 (1). According to Sibley, his entitlement to disability retirement benefits is clear. Because his injuries were covered under workers' compensation, he argues that it would therefore follow that they should have been covered for purposes of accidental disability retirement. The problem with this logic is that, although the definition of

"personal injury" is given the same meaning under both the workers' compensation statute and accidental disability retirement statute, the critical issue in this case is not the definition of personal injury but rather causation.  It is undisputed that Sibley has a personal injury and that as a result he is unable to perform his job duties -- the question is whether his injury was caused by a specific identifiable condition of his occupation, as opposed to general wear and tear.

Sibley's argument fails to recognize the difference between workers' compensation benefits and accidental disability retirement benefits.  That Sibley was entitled to receive workers' compensation benefits for his injury does not establish that he is also entitled to receive disability retirement benefits because the standard of causation differs.  In directly comparing the two statutes, the Supreme Judicial Court has held that "an injured employee's entitlement to benefits under G. L. c. 32, § 7 (1), is significantly different from an injured employee's entitlement to benefits under G. L. c. 152."  Murphy, 463 Mass. at 347.  Indeed, "[t]he language of G. L. c. 32, § 7 (1), is much more restrictive than that of the workers' compensation statute" (quotation and citation omitted).  Id. Although the Murphy court was analyzing a disability arising out

11

of a specific incident, its opinion is nevertheless instructive that the DIA's interpretations of causation in workers' compensation cases do not control the question in accidental disability retirement cases. Accordingly, we cannot conclude that CRAB's interpretation of G. L. c. 32, § 7 (1), was unreasonable or an error of law merely because the causation standard is more generous under G. L. c. 152.

In conclusion, Sibley's case is similar to those in which recovery was denied as the disability resulted from wear and tear despite engaging in a lengthy period of frequent activity. See Doyle's Case, 269 Mass. 310 (1929) (no compensable injury where evidence showed that employee's back had been weakened by years of physical exertion); Burns' Case, 266 Mass. 516 (1929) (no compensable injury where heart deterioration was caused in part by frequent walking up and down stairs); Blanchette, 20 Mass. App. Ct. at 487 (mental and emotional stress of job as school custodian not identifiable condition and not compensable); Sugrue v. Contributory Retirement Appeal Bd., 45 Mass. App. Ct. 1, 5-6 (1998) (mental stress suffered by police officer because of interactions with his superior officers was not identifiable condition not common or necessary to all or great many occupations). Sibley performed a variety of tasks required of a heavy laborer in a highway maintenance department

such as lifting heavy objects and shoveling, but those job duties do not sufficiently distinguish his occupation from a wide variety of other occupations where the employee is required to engage in similar activities.  Accordingly, given the narrow scope of judicial review, we cannot conclude that the CRAB decision was unsupported by substantial evidence or legally erroneous.

<u>Judgment affirmed</u>.

By the Court (Ditkoff, Hand & Walsh, JJ.[4]),

Clerk

Entered:  May 5, 2025.

---

[4] The panelists are listed in order of seniority.

13