BOSTON RETIREMENT BOARD *vs.* CONTRIBUTORY RETIREMENT
APPEAL BOARD & another.[1]

Suffolk. January 5, 2004. - February 17, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contributory Retirement Appeal Board. Municipal Corporations,* Retirement
board. *Public Employee Retirement Administration Commission.*
*Retirement. Administrative Law,* Agency's interpretation of statute,
Agency's authority.

This court concluded that the Public Employee Retirement Administration
Commission (PERAC) properly defined "earned income" for purposes of
G. L. c. 32, § 91A, to include a distribution of corporate profits to a
salaried shareholder-employee, where PERAC's definition of "earned
income" was a reasonable interpretation of the statute on its face and was
not subject to the definition of "annual gross earned income" in § 1 of
that statute. [81-83]

The Public Employee Retirement Administration Commission (PERAC) was
not required to follow the formal rulemaking procedures of G. L. c. 7,
§ 50, and G. L. c. 30A, §§ 2, 3, when it issued a memorandum clarifying
the definition of "earned income" as used in G. L. c. 32, § 91A. [83-84]

A directive the Public Employee Retirement Administration Commission
(PERAC) issued reversing a municipal retirement board's determination
that a certain retiree's profit distribution from a corporation in which he
was a salaried shareholder was not earned income to be deducted from his
pension and ordering it to recoup that retiree's excess earnings pursuant to
G. L. c. 32, § 91A, was a proper exercise of PERAC's authority pursuant
to G. L. c. 32. [84-85]

The rule of necessity required the participation of a biased Public Employee
Retirement Administration Commission (PERAC) representative in the
Contributory Retirement Appeals Board (CRAB)'s review of a Division of
Administrative Law Appeals magistrate's decision, where removing
PERAC's representative from the review process would have left CRAB
without a quorum to take valid action. [85]

CIVIL ACTION commenced in the Superior Court Department on
October 18, 2000.

The case was heard by *Maria I. Lopez,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

[1]Public Employee Retirement Administration Commission.

*Nicholas Poser* for the plaintiff.

*Christopher O. Quaye*, Assistant Attorney General, for the defendants.

COWIN, J. The principal issue in this case is whether, consistent with G. L. c. 32, the retirement systems and pensions statute, the Public Employee Retirement Administration Commission (PERAC), may define "earned income" for purposes of G. L. c. 32, § 91A, to include a distribution of corporate profits to a salaried shareholder-employee. We conclude that PERAC may so define "earned income" and affirm the decision of the Superior Court in this matter.

1. *Background.* The relevant facts are not in dispute. In 1978, the Boston Retirement Board (retirement board) granted accidental disability retirement benefits to Paul Theodos,[2] who had retired from the Boston police department. In 1986, Theodos and his brother started "Four T's Fuel Stop," a Subchapter S corporation,[3] which Theodos now owns in equal shares with his son and daughter. Theodos works at "Four T's" approximately four hours a day and serves as its treasurer and clerk. His gross salary is $250 per week. For the 1997 calendar year, Theodos reported $13,250 in W-2 earnings. He also received what he and his children refer to as a "shareholder distribution" of $38,158 from "Four T's." In November, 1998, the retirement board notified Theodos that he was required to refund a portion of the pension he received in 1997, in the amount of $11,497.86.[4] Theodos objected and requested a hearing before the retirement board.

---

[2]Theodos is not a party to this appeal and, for reasons not apparent in the record, did not seek review of the decision of the Contributory Retirement Appeal Board (CRAB).

[3]A Subchapter S corporation is a small business corporation that satisfies various criteria of the Internal Revenue Code, including the requirement that there be no more than seventy-five shareholders and that the shareholders (with limited exceptions) be individuals. See 26 U.S.C. §§ 1361, 1362(a) (2000).

[4]This amount reflected Theodos's excess retirement allowance pursuant to G. L. c. 32, § 91A. General Laws c. 32, § 91A, states that if a retired person's annual "earnings exceed an amount which when added to the member's retirement allowance is greater than the amount of regular compensation which would have been payable to such member if such member had continued in service in the grade held by him at the time he was retired plus

On December 30, 1998, responding to inquiries from local retirement boards,[5] PERAC issued a memorandum clarifying the definition of "earned income" as used in G. L. c. 32, § 91A, and instructed boards to use this definition in determining whether a disability retiree is "over-earning" under that section.[6] Pursuant to this definition, Theodos's profit distribution from "Four T's" would constitute "earned income." However, the retirement board hearing officer who conducted a hearing on Theodos's case concluded that Theodos's $38,158 profit distribution was not "earned income" within the meaning of G. L. c. 32, § 91A. The retirement board adopted the officer's finding and so informed PERAC. PERAC notified the retirement board that its determination was incorrect as a matter of law and directed the retirement board to recover the excess amount of $11,497.86.

Theodos appealed from PERAC's determination to the Contributory Retirement Appeal Board (CRAB), and the retirement board intervened. An administrative magistrate of the Division of Administrative Law Appeals (DALA) heard the matter, see G. L. c. 32, § 16 (4), made findings of fact, and reversed PERAC's decision. PERAC objected to the decision and sought further review from CRAB, which adopted the DALA magistrate's findings of fact, but concluded that PERAC acted properly when it defined "earned income" to include

the sum of five thousand dollars, said member shall refund the portion of his retirement allowance for such preceding year equal to such excess."

[5]PERAC approves local board determinations and supervises their accounting and record-keeping practices, G. L. c. 32, § 21, and is "charged by statute with over-all responsibility to administer the public employee retirement system." *Barnstable County Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 43 Mass. App. Ct. 341, 345 (1997).

[6]PERAC's memorandum stated: "The term 'earned income,' as used in G. L. c. 32, § 91A, is not defined in G. L. c. 32. Black's Law Dictionary, Revised Fourth Edition, defines earned income as 'imply[ing] some labor, management or supervision in production thereof, not income derived from ownership of property.' It is [PERAC's] position that, for the purposes of G. L. c. 32, if an individual operates a business for profit, individually or through an agent, that individual does not have the option of classifying such income as dividends as opposed to wages. Profits derived from the operation of a business through some labor, management or supervision of production of such profits are earned income, regardless of how a retiree categorized such income for income tax or other purposes."

Theodos's profit distribution. Pursuant to G. L. c. 30A, § 14, the retirement board sought judicial review of CRAB's decision. A Superior Court judge affirmed CRAB's decision, and the retirement board appealed. We transferred the case to this court on our own motion.

2. *Discussion.* The retirement board's principal claim is that PERAC's memorandum defining "earned income" for purposes of G. L. c. 32, § 91A, is invalid because it conflicts with the statutory language of G. L. c. 32, § 1.

General Laws c. 32, § 91A, provides that:

> "Every person pensioned or retired under any general or special law for disability, including accidental disability, shall in each year . . . file with [PERAC] a statement, in such form as [PERAC] shall prescribe, certifying the full amount of his *earnings from earned income* during the preceding year" (emphasis added).

General Laws c. 32, § 1, which defines "words and phrases as used in sections one to twenty-eight inclusive," defines "[a]nnual gross earned income" as:

> "income earned by a retired member under any provision of this chapter, and referring to compensation earned for performing personal services actually performed, including wages, salaries, fees, commissions or gratuities, or similar income, during each calendar year."

The retirement board contends that the definition of "[a]nnual gross earned income" in G. L. c. 32, § 1, applies to "earned income" in G. L. c. 32, § 91A. We disagree. The primary source of legislative intent is the plain language of the statute. *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). The Legislature has expressly limited the application of § 1, and therefore, the definition of "[a]nnual gross earned income" therein, to "sections one to twenty-eight inclusive." When the Legislature adopted the definition in § 1 in 1982, see St. 1982, c. 630, § 6, § 91A referred to "gainful occupation." The term "earned income" did not replace "gainful occupation" in § 91A until 1996. See St. 1996, c. 306, § 50. Had the Legislature

intended § 1's definition to be used in § 91A, it presumably would have so stated when it amended G. L. c. 32, § 91A, in 1996. The fact that the Legislature chose not to employ a term it recently had defined indicates that "earned income," pursuant to § 91A, and "[a]nnual gross earned income" in § 1, are not one and the same. See *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994) (Legislature presumed to be aware of existing statutes).[7]

Even if the definition of "[a]nnual gross earned income" in § 1 applies to "earned income" in § 91A, PERAC's definition would still be a reasonable interpretation. Where an agency's interpretation of a statute is reasonable, the court should not supplant it with its own judgment. *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000), and cases cited. General Laws c. 32, § 1, defines "[a]nnual gross earned income" as "compensation earned for performing personal services actually performed, including wages, salaries, fees, commissions or gratuities, or *similar income*, during each calendar year" (emphasis added). All the items listed (e.g., wages, salaries) require "some labor, management or supervision." See note 6, *supra*. Therefore, PERAC's interpretation is consistent with "similar income" pursuant to G. L. c. 32, § 1.

PERAC's definition of "earned income" is a reasonable interpretation of the statute on its face, thereby suggesting that it is consistent with legislative intent. A characteristic of closely held corporations is that shareholders are actively employed by the corporation in some capacity and receive what would ordinarily be corporate profits as compensation in their capacity

---

[7]Quoting the § 1 definition of "[a]nnual gross earned income" as "that income earned by a retired member *under any provision of this chapter*," the retirement board argues that the italicized words indicate that the definition of "annual gross earned income" in § 1 applies to all of G. L. c. 32, including § 91A. This is incorrect. The language quoted by the retirement board modifies language within the definition ("income earned" or, conceivably, "retired member"). However, it does not supersede the language in § 1 that expressly limits its definitions to "sections one to twenty-eight inclusive." G. L. c. 32, § 1.

as employees.[8] These earnings, regardless of the form in which the shareholder-employee receives them or how they are labeled, are "earned income." The shareholder works for these earnings, and therefore, they are not what would generally be considered a distribution from a passive investment. Accordingly, PERAC's definition includes the type of income the Legislature intended to be included as "earnings from earned income" for purposes of § 91A and is plainly consistent with legislative intent.

We interpret a statute to give effect to the Legislature's purpose. *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986). The purpose of § 91A is to prevent the overpayment of retirement benefits to individuals who are, by their labor, management, or supervision, earning a significant amount of money while simultaneously receiving a disability allowance. PERAC's definition furthers this purpose because it prevents disability retirees such as Theodos from circumventing the statute by labeling such earnings as something other than what they are.

We address the retirement board's remaining claims in turn. The retirement board argues that PERAC was required to follow the formal rulemaking procedures of G. L. c. 7, § 50, and G. L. c. 30A, §§ 2, 3, when it issued its memorandum. The Administrative Procedure Act defines a "[r]egulation" as including "the whole or any part of every rule, regulation, standard or other requirement of general application and future effect." G. L. c. 30A, § 1 (5). In 1970, the Legislature deleted the words "interpretation thereof" from the definition of "regulation." Compare St. 1970, c. 712, § 2, with St. 1969, c. 808, § 2. Formal rule making is unnecessary "where the agency is intending to fill in the details or clear up an ambiguity of an established policy, rather than to inaugurate a material change of policy." *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n*, 371 Mass. 705, 707 (1977). See *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Comm'n*, 354 Mass. 408, 414 (1968) ("reinterpretation of the reasoning behind the application of

---

[8]This is the case here. "Four T's Fuel Stop" is a closely held corporation, owned by Theodos and his two children in equal shares, and employing all three of its shareholder-owners.

existing rules" not rule or regulation under G. L. c. 30A). PERAC's memorandum is not a "regulation" within the meaning of G. L. c. 30A, § 1 (5), and therefore did not require formal rule making procedures. PERAC circulated the memorandum after receiving inquiries from local boards concerning the definition of "earned income." Thus, the memorandum was issued only to clear up an ambiguity and fill in gaps for determining what constitutes "earned income" pursuant to § 91A. *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n, supra.*

The retirement board argues that it would be arbitrary and capricious to apply PERAC's interpretation retroactively to Theodos's 1997 earnings. This argument was not raised in the CRAB proceedings and, therefore, was waived. *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 125-126 (1985), and cases cited.

The retirement board challenges PERAC's authority to reverse its determination regarding Theodos's excess retirement allowance. PERAC has broad statutory authority to oversee the public employee retirement system. *Barnstable County Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 43 Mass. App. Ct. 341, 345 (1997) (discussing PERAC's predecessor). See G. L. c. 32, § 21 (1) (*d*) (PERAC "may review all accidental and ordinary disability pensions . . . granted by the retirement boards"); G. L. c. 32, § 21 (3) (PERAC "shall be the technical advisor of the board of each such system . . . and shall perform such actuarial duties as are required . . . including, but not limited to . . . the approval of the amount of allowances under the provisions of said chapters"); G. L. c. 32, § 21 (4) (PERAC "shall promulgate such rules and regulations as . . . necessary from time to time to effectuate the purposes of this chapter"). Furthermore, G. L. c. 32, § 21 (4), empowers PERAC to "approve any . . . determinations of any board in order to effectuate" the chapter's purposes. The power to "approve" determinations of local retirement boards is a "broad grant of review authority," *Plymouth County Retirement Ass'n* v. *Commissioner of Pub. Employee Retirement,* 410 Mass. 307, 312 (1991), and necessarily implies the lesser power to "disapprove" or "reverse" a local retirement board's determination. Cf. *Mello* v. *License Comm'n of Revere,* 435 Mass. 532, 534-535 (2001),

and cases cited. PERAC's directive reversing the retirement board's determination and ordering it to recoup Theodos's excess earnings pursuant to § 91A, was a proper exercise of PERAC's authority pursuant to G. L. c. 32.

Finally, the retirement board claims that the PERAC appointee's bias or prejudice precluded him from participating in CRAB's review of the DALA magistrate's decision. The rule of necessity required the PERAC representative's participation. CRAB consists of three members: an assistant attorney general, a PERAC representative, and the Governor's appointee. G. L. c. 32, § 16 (4). At the time this matter was reviewed, CRAB consisted of only two members because the Governor had not yet appointed the third member. Pursuant to the rule of necessity, "a member of an administrative board who is biased or prejudiced . . . is not required to withdraw from the hearing if no other board can hear and determine the matter, especially if his withdrawal would deprive the board of the number of members required to take a valid affirmative vote." *Moran* v. *School Comm. of Littleton*, 317 Mass. 591, 593 (1945), and cases cited. CRAB validly invoked the "rule of necessity." Removing PERAC's representative from the review process would have left CRAB without a quorum to take valid action.

*Judgment affirmed.*