ANTONIO PULSONE *vs.* PUBLIC EMPLOYEE RETIREMENT
ADMINISTRATION COMMISSION
(and a companion case[1]).

Nos. 02-P-1450 & 03-P-0872.

Middlesex. Suffolk. January 7, 2004. - April 7, 2004.

Present: McHUGH, COHEN, & GREEN, JJ.

*Public Employee Retirement Administration Commission. Public Employment,
Retirement, Accidental disability retirement, Reinstatement of personnel.
Retirement. Statute, Construction.*

This court concluded that under rules of statutory construction, G. L. c. 32,
§ 8(2)(*a*), and the regulation in effect in 1999 at the time that one public
employee applied for reinstatement to his position following an extended
disability retirement did not require that the regional medical panel
considering the employee's application be unanimous in determining that
the employee was able to perform the essential duties of the position from
which he retired [793-796], but that after the promulgation of a regulation
in 2000 that was valid and enforceable, the regional medical panel was
required to be unanimous in its determination, and therefore, the defendant
properly denied a second public employee's application for reinstatement
[796-798].

CIVIL ACTION commenced in the Superior Court Department on
January 17, 2002.

The case was heard by *Thomas P. Billings*, J.

CIVIL ACTION commenced in the Superior Court Department on
June 13, 2001.

The case was heard by *S. Jane Haggerty*, J., on a motion for
summary judgment.

*Susan Paulson & Amy Spector*, Assistant Attorneys General,
for Public Employee Retirement Administration Commission.

*Antonio Pulsone*, pro se.

*Daniel M. McDonald* for Peter Leary.

[1]Peter Leary *vs.* Public Employee Retirement Administration Commission
& others.

GREEN, J. These two cases occasion our consideration of the process by which a regional medical panel evaluates whether a member of the public employee retirement system, retired under a disability, may return to work. Both cases involve a public employee who seeks to return following an extended disability retirement; in both cases two members of the regional medical panel concluded that the employee is now able to perform the essential duties of the position from which he retired, and one member of the panel concluded the contrary. Based on its contention that, under G. L. c. 32, § 8(2)(a), the medical panel's determination must be unanimous, the defendant Public Employee Retirement Administration Commission (PERAC) denied both employees' requests to return to work; the cases come to us on appeals from judgments entered by two different judges of the Superior Court ordering reinstatement of the employees.[2]

We conclude that PERAC's position is not supported by the statute standing alone or the regulations in effect prior to 2000, but that a regulation promulgated in 2000 by PERAC under rulemaking authority delegated to it permissibly imposed the requirement for unanimous action by the medical panel. Since the plaintiff Antonio Pulsone's case is governed by the 2000 regulation, we reverse the judgment ordering his reinstatement. However, since the plaintiff Peter Leary's case is governed by the statute and regulations as in effect before 2000, we affirm the judgment ordering his reinstatement.

*Background.* Leary worked as a parole officer for the Massachusetts Parole Board from 1965 to 1975, when he retired on accidental disability following back and neck surgery in 1975.

---

[2]Leary appealed PERAC's denial of reinstatement to the Contributory Retirement Appeal Board (CRAB) under G. L. c. 32, § 16(4), where an administrative judge in the Division of Administrative Law Appeals reversed and ordered reinstatement. PERAC appealed to CRAB, which adopted the administrative judge's findings but dismissed Leary's appeal for lack of jurisdiction. Leary then filed suit in Superior Court where a judge ordered his reinstatement pursuant to G. L. c. 231A.

Pulsone apparently appealed from PERAC's denial of reinstatement directly to the Superior Court (the record is not entirely clear on the point), but PERAC does not argue here (nor does it appear to have argued below) that Pulsone's appeal is defective for failure to exhaust his administrative appeals. See *Sullivan* v. *Brookline*, 435 Mass. 353 (2001).

Pulsone worked as a police officer in the town of Weston from 1970 to 1987, when he retired on accidental disability as the result of a back injury suffered in 1985. In 1999 (as to Leary) and 2001 (as to Pulsone), both applied for reinstatement to active service in their former positions. Following evaluation of each retiree by a regional medical panel, PERAC, based on the contention that the panel must be unanimous, denied each application for reinstatement because one member of the panel in each case concluded that the retiree was not able to perform the essential duties of his former position.

*Discussion.* The determination whether a disability retiree should be returned to active service is governed by G. L. c. 32, § 8.[3] The statute, as amended through St. 1996, c. 306, § 16, requires reinstatement of a retiree determined by a regional medical panel to be qualified for and physically able to perform the essential duties of the position from which he retired.[4] The legislative purpose of the 1996 amendments was to require disability retirees who are capable of returning to work to do so. See *White* v. *Boston*, 428 Mass. 250, 253 (1998).

In support of its contention that the determination of the regional medical panel must be unanimous, PERAC directs our attention to the fact that, unlike the provisions of §§ 6 and 7 of G. L. c. 32 (which explicitly provide that the determination of a regional medical panel thereunder is by a majority of the panel), § 8 is silent on whether the panel must act unanimously or by a

---

[3]General Laws c. 32, § 8(2)(*a*), as appearing in St. 1998, c. 252, § 2, provides, in pertinent part:

> "If, after two years of the date that a member is retired under section 6 or 7, the *regional medical panel determines* that the retired member is qualified for and able to perform the essential duties of the position from which he retired or a similar position within the same department, as determined by the personnel administrator, said member shall be returned to said position, provided the position is vacant. If the position has been filled, the member shall be granted a preference for the next available position or similar position for which he is so qualified." (Emphasis supplied.)

[4]Prior to the 1996 amendment, reinstatement was discretionary, and was subject to a separate approval by the head of the department in which the position exists. See *White* v. *Boston*, 428 Mass. 250, 252 (1998); *Sullivan* v. *Brookline*, 435 Mass. 353, 356 (2001).

majority.[5] "As a general rule, when the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present." *Leary* v. *Contributory Retirement Appeal Bd.*, 421 Mass. 344, 348 (1995), quoting from *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 283 (1991). PERAC also reminds us that, as the agency charged with administration of the statute, its interpretation is entitled to deference. See *Hayes* v. *Retirement Bd. of Newton*, 425 Mass. 468, 470 (1997).

Two other statutes bear on the matter. The first is G. L. c. 4, § 6, Fifth, as amended by St. 1998, c. 170, which furnishes a general rule of construction applicable to statutes such as the one at issue here:

> "Words purporting to give a joint authority to, or to direct any act by, three or more public officers or other persons shall be construed as giving such authority to, or directing such act by, a majority of such officers or persons."

Under the preamble to c. 4, § 6, the specified rule of construction shall apply "unless [its] observance would involve a construction inconsistent with the manifest intent of the lawmaking body or repugnant to the context of the same statute."

The second statute bearing on our analysis is G. L. c. 7, § 50, as amended through St. 1997, c. 19, § 5. It outlines PERAC's powers and duties, including:

> "(*a*) promulgating rules and regulations governing administrative procedures, financial operations, records and reports of the retirement boards, subject to the approval of the general court[6]; provided, that if the general court takes no final action relative to such rules and regulations within forty-five days of the date said such rules and regulations are filed with the clerks of the house of representatives and the senate, the general court not hav-

---

[5]General Laws c. 32, §§ 6 and 7, govern the initial determination of disability retirement in cases of ordinary and accidental disability, respectively.

[6]We note that the legislative oversight provided for in the statute, making the commission's rulemaking authority "subject to the approval of the general court," is apparently quite rare. We find no other comparable provision in any other statute currently in effect.

ing prorogued within said forty-five days such rules and regulations shall be deemed to be approved."

The parties press conflicting explanations of why their preferred interpretation furthers the policy considerations underlying the statute. The plaintiffs argue that PERAC's insistence on unanimity by the medical panel stands at odds with the desire to return able bodied retirees to work. For its part, PERAC contends that public safety supports the exercise of caution, favoring certainty in the form of unanimity, before returning a public safety officer to active service. Though we acknowledge the existence of policy considerations supporting both interpretations, we leave the exercise of weighing them to the Legislature, as the matter may be resolved on the basis of the relevant statutes alone.

Standing alone, G. L. c. 32, § 8(2)(a), falls squarely within the reach of the rule of construction directed by G. L. c. 4, § 6, Fifth. Under the application of the latter statute, action by the regional medical panel means action by a majority of the members of the panel. Whatever we might make of the difference between §§ 6 and 7 of G. L. c. 32 (which explicitly refer to majority action) and § 8 (which is silent on the topic), we do not consider application of the statutorily prescribed rule of construction to be "inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute." G. L. c. 4, § 6. Since Leary's case is governed by the statute and regulation as then in effect,[7] unaided by the subsequently amended regulation requiring unanimous action by

---

[7]As in effect on February 22, 2000, the date Leary's request was acted upon, 840 Code Mass. Regs. § 10.13(2)(b) (1998) was (like G. L. c. 32, § 8) silent on the question whether the medical panel's determination must be unanimous. PERAC's position that the panel must be unanimous was the result of a policy change by PERAC, adopted without amendment to the regulation only a short time before Leary applied for reinstatement. While we owe considerable deference to PERAC's interpretation of its own regulations, see *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 208 (1995), the fact that it did not interpret the regulation consistently diminishes the force of that principle in application to the present case. Moreover, PERAC has placed nothing in the record, as, for example, a memorandum announcing the policy change, contrast *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 441 Mass. 78, 80 (2004), to establish that such a policy change was, indeed, made and applied uniformly thereafter. There is thus nothing in the record to assure us that PERAC's administration

the panel, the determination by a majority of the members of the medical panel evaluating him was sufficient to direct his reinstatement, and we affirm the judgment in his case.

Pulsone's case stands differently. His request for reinstatement arose following PERAC's promulgation, in 2000, of an amended version of 840 Code Mass. Regs. § 10.13(2), requiring that a determination by a regional medical panel that a disability retiree is fit to return to work must be unanimous.[8] We must accordingly determine whether the regulation imposing the unanimity requirement is valid.

"A court will not declare a regulation void unless its provisions cannot, in any appropriate way, be interpreted in harmony with the legislative mandate." *Student No. 9* v. *Board of Educ.*, 440 Mass. 752, 763 (2004). See *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 441 Mass. 78, 82-83 (2004).

In evaluating whether the regulation permissibly implements the statute we consider relevant the procedures attendant to PERAC's adoption of regulations under the separate statutory delegation of rulemaking authority contained in G. L. c. 7,

---

of the regulation before the 2000 amendment was not arbitrary or capricious. Cf. *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478 (1976).

We also observe that the question whether the medical panel must act unanimously is not as dependent on the specialized expertise of the agency in administering and calculating retirement benefits as (for example) construing the meaning of terms prescribing the basis for benefits. See, e.g., *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 441 Mass. at 82-83; *Evans* v. *Contributory Retirement Appeal Bd.*, 46 Mass. App. Ct. 229, 233 (1999).

[8]Title 840 Code Mass. Regs. § 10.13(2)(b) (2000) provides, in pertinent part, as follows:

"If after two years from the date of retirement a *medical panel unanimously determines* that the disability retiree is qualified for and able to perform the essential duties of the position from which he or she retired or a similar position within the same department, as determined by the State Human Resources Division, the member shall be returned to said position, provided the position is vacant. . . . If no vacancy exists, the member shall be granted a preference for the next available position or similar position for which he is so qualified." (Emphasis supplied.)

§ 50(*a*). As noted above, under that delegation PERAC's rule-making authority is "subject to the approval of the general court," but if the Legislature takes no action on proposed regulations within forty-five days following submission for review the regulations are "deemed to be approved."[9] This retention of legislative oversight over PERAC's exercise of its delegated rulemaking authority lends weight to PERAC's contention that it acted permissibly within the bounds of the statute in requiring unanimous action by the regional medical panels under a statute silent on the question whether unanimity or majority action should be required. The retained power to consider PERAC's exercise of its delegated rulemaking authority is not merely an abstract or academic artifact; PERAC has furnished us with copies of the letter under which it submitted to the General Court the regulations here at issue, and the letter it thereafter received from the chairs of the Joint Committee on Public Service, confirming their detailed review of the proposed regulations and commending the agency and its staff on preparing a comprehensive body of regulations. Put another way, even though the statute standing alone does not express a "manifest intent" to require unanimous action by regional medical panels under § 8, as would remove it from operation of the general rule of construction prescribed by G. L. c. 4, § 6, Fifth, the Legislature's subsequent approval of PERAC's regulations imposing such a requirement sufficed to endorse PERAC's exercise of its rulemaking authority as being in harmony with the statute, and the regulation is valid and enforceable. See *Opinion of the Justices*, 383 Mass. 895, 915-916 (1981) (Legislature has power to "declare . . . bill's intended meaning, within the limits of the Constitution"). Because Pulsone's case is governed by the amended regulation, and that regulation is a valid exercise of the rulemaking authority delegated to

---

[9]The provision for "deemed approval" of PERAC's regulations was part of the statute as first adopted under St. 1982, c. 630, § 2. It received further legislative attention in 1991, when it was amended to provide that regulations would not be deemed approved if the General Court prorogued within the forty-five day period envisioned for legislative review and action. See St. 1991, c. 558. The parties have not raised, and we accordingly do not consider, any question regarding the constitutional validity of the statutory mechanism of "deemed approval."

PERAC in implementation of the statute, we reverse the judgment in Pulsone's case.

*Conclusion.* The judgment in Leary's case is affirmed. The judgment in Pulsone's case is reversed.

*So ordered.*