WILLIAM GORMAN vs. CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

No. 05-P-695.

Suffolk. March 14, 2006. - August 16, 2006.

Present: LAURENCE, BERRY, & DOERFER, JJ.

*Contributory Retirement Appeal Board. Public Employee Retirement
Administration Commission. Municipal Corporations,* Retirement board.
*Retirement. Public Employment,* Retirement. *Administrative Law,* Agency's
interpretation of statute.

The Contributory Retirement Appeal Board correctly determined, for purposes
of calculating pension overpayments and recoupment pursuant to G. L.
c. 32, § 91A, that a retired public employee's earned income from third-
party employment was the amount of wages stated in the employee's W-2
form, without any reduction for potential tax deductions. [126-128]

CIVIL ACTION commenced in the Superior Court Department on
March 5, 2003.

The case was heard by *Geraldine S. Hines,* J., on a motion
for judgment on the pleadings.

*David A. Guberman,* Assistant Attorney General, for the
defendants.

*Paul T. Hynes* for the plaintiff.

BERRY, J. The Contributory Retirement Appeal Board (CRAB)
and the Public Employee Retirement Administration Commis-
sion (PERAC) appeal from a decision of the Superior Court
reversing, in part, a CRAB decision requiring the plaintiff, Wil-
liam Gorman, to reimburse the Commonwealth for a portion of
the disability pension payments Gorman received in 1998 and
1999. General Laws c. 32, § 91A,[2] caps the amount of "earned

[1]Public Employee Retirement Administration Commission.
[2]General Laws c. 32, § 91A, as appearing in St. 1996, c. 306, § 50,
provides, in relevant part:

income" a pensioner, such as Gorman, may receive from third-party employment, and if that cap is exceeded, the pensioner must return to the Commonwealth pension monies in an amount corresponding to the excess over the cap.

At issue is whether CRAB correctly determined that Gorman's earned income for purposes of G. L. c. 32, § 91A, was the amount of wages stated in box 1 of his W-2 form,[3] without any reduction for unreimbursed travel expenses. Gorman contends that his earned income for purposes of calculation under § 91A should be reduced because such unreimbursed travel expenses were subject to deduction on his income tax returns. We hold that CRAB properly calculated earned income based on the W-2 stated wages and that amount was not reducible for potential tax deductions. The determination of tax liabilities, including but not limited to taxable income adjusted for deductions or credits on Federal and State income tax returns, does not control the calculation of pension overpayments and recoupment under § 91A.

1. *Background.* Gorman is a retired State police officer receiving a disability pension from the Commonwealth. Following his retirement, Gorman commenced employment with Walters State Community College in Morristown, Tennessee (Walters State).

Pursuant to G. L. c. 32, § 91A, a pensioner, such as Gorman,

---

"Every person pensioned or retired under any general or special law for disability . . . shall in each year . . . file with [PERAC] a statement . . . certifying the full amount of his earnings from earned income during the preceding year. Such pensioned or retired person shall annually submit to [PERAC] all pertinent W-2 forms, 1099 forms, other requested tax forms and proof of income, and any other documentation requested by [PERAC]. . . . If such earnings exceed an amount which when added to the member's retirement allowance is greater than the amount of regular compensation which would have been payable to such member if such member had continued in service in the grade held by him at the time he was retired plus the sum of five thousand dollars, said member shall refund the portion of his retirement allowance . . . equal to such excess . . . ."

Section 91A was amended in 2004 by St. 2004, c. 149, § 85, but the portions of the statute pertinent to this appeal were not changed.

[3]Box 1 of the W-2 form states the amount of wages, tips, and other compensation paid to an employee in a given calendar year.

must report "the full amount of his earnings from earned income" to PERAC, and if the pensioner receives more earned income than is allowable under § 91A,[4] the pensioner must reimburse the Commonwealth for that excess. For calendar years 1998 and 1999, Gorman complied with the pertinent filing requirement and reported his income by providing PERAC with various of his tax filings, including his W-2 wage statement and tax returns. Those tax forms showed that Gorman's wages from his employer, Walters State, were in excess of the earned income allowance set under § 91A. The tax forms submitted by Gorman to PERAC also listed claimed deductions for unreimbursed travel expenses for the 1998 and 1999 tax years of $5,422 and $6,027, respectively.

Based on these filings, PERAC calculated that Gorman's 1998 and 1999 earned income exceeded the allowable amounts under § 91A by $10,101.87 and $8,202.78, respectively, and PERAC directed the State Board of Retirement to inform Gorman that he was responsible for returning approximately $18,000 in excess retirement payments for the two years.[5] In reaching these determinations, PERAC did not credit Gorman with his claimed deductions for travel expenses, opining that, "[a]mounts paid by an employer for services rendered, whether later reduced for tax purposes as unreimbursed business expenses on a federal income tax or not, are earned income to Mr. Gorman within the provisions of G. L. c. 32, § 91A."

Gorman appealed PERAC's decision to CRAB, which referred the matter to the Division of Administrative Law Appeals (DALA). After a hearing, the DALA agreed with Gorman, finding that the unreimbursed travel expenses should not have been counted as part of Gorman's earned income. PERAC filed objections to the DALA's findings, and CRAB reversed, siding with PERAC. CRAB held that the term "full amount of earnings from earned income," as used in § 91A, "means all earnings, not earnings reduced by expenses that the retiree claims for income tax purposes." It noted that if the payments had

---

[4]Basically, the current annual salary for the pensioner's last position, plus $5,000.

[5]This combined total also includes deductions for deferred compensation. Those deductions are not at issue in this appeal.

been made to Gorman "as reimbursement for expenses documented by receipts, they would not be earned income." Gorman, however, had not made such a showing. Gorman then appealed CRAB's decision to the Superior Court, which again reversed, concluding that the unreimbursed travel expenses were not earned income for the purposes of § 91A. This appeal followed.

2. *The CRAB construction of G. L. c. 32, § 91A, "earned income."* We consider whether CRAB's interpretation of earned income for purposes of § 91A — essentially as being equivalent to Gorman's reported wages without deduction for claimed expenses — is reasonable. Decisions of administrative agencies are afforded great deference, but "[w]here an agency determination involves a question of law, it is subject to de novo judicial review." *Flemings* v. *Contributory Retirement Appeal Bd.,* 431 Mass. 374, 375 (2000). Nevertheless, "[w]here an agency's interpretation of a statute is reasonable, the court should not supplant it with its own judgment." *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 441 Mass. 78, 82 (2004), citing *Flemings, supra* at 375.

The term "earnings from earned income" in § 91A is not defined. However, in 1998, PERAC issued a memorandum in which it defined "earned income" as "imply[ing] some labor, management or supervision in production thereof" (the first clause). PERAC elaborated that for an individual operating a business for profit, earned income would include "[p]rofits derived from the operation of a business through some labor, management or supervision of production of such profits . . . *regardless of how a retiree categorized such income for income tax or other purposes"* (emphasis supplied) (the second clause). PERAC Memo #64/1998 (hereinafter referred to as PERAC #64 memorandum).[6] PERAC's interpretation of the meaning of "earned income" for the purposes of § 91A, as described in

---

[6]PERAC later incorporated the substance of the PERAC #64 memorandum into its regulations. See 840 Code Mass. Regs. § 10.14(4)(2004), which provides as follows:

> "The term 'earnings from earned income' [in § 91A] shall mean income that implies some labor, management or supervision in the production thereof, not income derived from ownership of property. . . . Profits

this memorandum, was considered by the Supreme Judicial Court in *Boston Retirement Bd.*, 441 Mass. at 82, and found to be a reasonable interpretation of the statutory language. Cf. G. L. c. 32, § 1.[7]

The PERAC #64 memorandum and the holding in *Boston Retirement Bd.*, *supra*, addressed profits derived from a pensioner's operation of a business. In this case what is at issue are employee wages, not business profits. However, as applied to pension distribution overages under § 91A, the analysis in the PERAC #64 memorandum is pertinent to wages, not just business profits. Indeed, both parties in this appeal cite the memorandum as authority and rely on it. We agree that the PERAC #64 memorandum informs the resolution of this appeal.

With the PERAC #64 memorandum as backdrop, the parties frame the analytic debate in this appeal in terms of whether Gorman's unreimbursed travel expenses should be considered under the first or second above-quoted clause of the PERAC #64 memorandum. Gorman argues that payments for his unreimbursed travel expenses do not fall within the first clause because they are not derived from "labor, management or supervision in production thereof" and, thus, cannot be considered part of his earned income. CRAB argues that because the expenses were included as income on Gorman's tax forms, they are countable under the second clause of the PERAC #64 memorandum as earned income, "regardless of how [Gorman] categorized such income for income tax or other purposes."

---

derived from the operation of a business through some labor, management or supervision of such profits are earned income, regardless of how a retiree categorized such income for income tax or other purposes."

[7]"Annual gross earned income" is defined as "income earned by a retired member under any provision of this chapter, and referring to compensation earned for performing personal services actually performed, including wages, salaries, fees, commissions or gratuities, or similar income, during each calendar year." G. L. c. 32, § 1, as inserted by St. 1982, c. 630, § 6. The court in *Boston Retirement Board* determined that " 'earned income,' pursuant to § 91A, and '[a]nnual gross earned income,' in § 1, are not one and the same." *Boston Retirement Bd*, 441 Mass. at 82. Nevertheless, the court found that PERAC's interpretation of "earned income" in its #64 memorandum was consistent with the definition found in § 1. *Ibid.*

We agree with CRAB that expense deductions claimed on a Federal or State income tax return (such as Gorman cites here) cannot, as matter of law, trump the pension overage standards in § 91A and the calculation of earned income under that statute. It is reasonable for PERAC and CRAB to rely on a pensioner's statement of income as shown on a W-2 form, and these governmental pension agencies cannot be called upon to conduct a tax-based analysis of what part of these "[w]ages, tips, [and] other compensation" as stated on an employee's W-2 tax form (see note 3, *supra*) may or may not be subject to deduction under the Federal Internal Revenue Code, 26 U.S.C. §§ 1 et seq. (2002), or State law, G. L. c. 62. Nor do we see anything in these tax code provisions that compels the conclusion that earned income for G. L. c. 32, § 91A, calculations can only reasonably be construed if linked to adjustments to wages or other W-2 compensation that may result on account of a taxpayer's claimed business expense deductions. Further consistent with this analysis is that § 91A refers to the "*full amount* of . . . earnings from earned income." G. L. c. 32, § 91A (emphasis supplied). "Full" means, in this context, the entire amount, without accounting for possible adjustments or deductions.

For these reasons, CRAB's determination that counting Gorman's W-2 declared wages as earned income is a reasonable interpretation of § 91A and is in accord with the purposes underlying the pension recoupment standards set forth in that section. See *Boston Retirement Bd.*, 441 Mass. at 82 (court will not supplant with its own judgment the construction of a statute adopted by the administrative agencies charged with enforcing that statute). The judgment of the Superior Court is reversed insofar as it held that CRAB erred in including the plaintiff's unreimbursed travel expenses as earned income. A new judgment shall enter affirming CRAB's decision.

*So ordered.*