HANLON, J.
*392 The plaintiff, Genworth Life Insurance Company (Genworth), appeals from a decision of a Superior Court judge granting summary judgment for the Commissioner of Insurance (commissioner).[1] The judge concluded that Genworth had *393 not followed the proper procedure to secure approval for proposed rate increases for long-term care insurance. We affirm.
Background. In December 2012, Genworth filed a request to increase very substantially the rates of its long-term care insurance policies. Each policy at issue provided that the premiums may not be increased unless "approved by the Massachusetts Commissioner of Insurance." In a bulletin released in 2008 (2008-08 bulletin), the commissioner announced that, beginning January 1, 2009, all filings by insurance *1021 carriers doing business in Massachusetts must be made using the Division of Insurance's (division) system for electronic rate and form filing (SERFF).[2] As the division explained in the 2008-08 bulletin, "The use of SERFF improves the Division's ability to review filings, communicate with insurance carriers, and prepare public records because it utilizes a paperless environment in which all submitted materials are stored instantly in a central location and in a pre-arranged format."
SERFF permits the insurance carrier to request a specific implementation date for a rate increase that is no sooner than thirty days after the filing. If no date is requested, the effective, or implementation, "[d]ate will be the date the filing is placed on file or approved." At any time, an insurer may change a rate increase from no date for implementation to a specified implementation date by giving proper notice of such action to the division through SERFF.
The judge determined that "[t]here is no dispute that Genworth was very familiar with SERFF and the rules that surrounded it." In fact, Genworth filed its 2012 request for rate increases through SERFF. In that filing, Genworth requested that the proposed increases become effective "on approval." Genworth, at least twice, amended its filings through SERFF to change the requested rate *394 increase, but never made any filing through SERFF that sought a specific deadline for the implementation of its requested rate increases.
After the rate increase request was filed, representatives of the division and Genworth engaged in negotiations and other exchanges until July 26, 2016, when the parties met again and Genworth expressed frustration about the delays in the process. On October 21, 2016, Genworth sent letters to the commissioner through e-mail and Federal Express, but not through SERFF.[3] ,[4] Each letter stated that it constituted formal notice that Genworth's proposed rates would take effect on November 21, 2016, "[u]nless the Division disapprove[d] the proposed rates and specifie[d] the reason(s) for such disapproval within the next 30 days."
Each letter cited G. L. c. 175, § 108, which provides,
"2. (a ) No policy of accident and sickness insurance shall be delivered or issued for delivery to any person in this commonwealth: until a copy of the policy and the table of rates or manual of risks of the company has been on file with the commissioner for at least thirty days, unless before the expiration of said thirty days the commissioner shall have approved the policy in writing; nor if the commissioner notifies the company in writing that in his opinion the form of said policy does not comply with the laws of the commonwealth, specifying the reasons for his opinion, provided that such action of the commissioner *1022 shall be subject to review by the supreme judicial court ...."
Thereafter, the parties resumed negotiations and Genworth agreed to delay the rate increase until December 16, 2016. The negotiations eventually broke down, and Genworth began the present action on January 9, 2017. On February 23, 2017, the commissioner sent Genworth a letter explicitly disapproving the rate increases and providing reasons for the disapproval.
Discussion. We review the allowance of a motion for summary judgment de novo. Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 637, 977 N.E.2d 552 (2012). In so doing, we consider "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991).
*395 Genworth argues, essentially, that under G. L. c. 175, § 108 (2), when read in combination with G. L. c. 175, § 193F,[5] its requested rate increase was "deemed approved" on December 16, 2016, because its October 21, 2016, letters provided the requisite notice, and the specified effective date for the increase controlled when the commissioner did not explicitly disapprove the increase within thirty days (extended by agreement to December 16, 2016). According to Genworth, its failure to file the request through SERFF was insignificant because the commissioner had actual notice of the requested increase. Genworth also argues that the division's rules for filing through SERFF exceeded the commissioner's authority.
The commissioner counters that, because Genworth's filings did not comply with the filing rules, specifically the requirement that the request be filed through SERFF, the statutes did not control; the new rates were not deemed approved and were, in fact, validly disapproved in the commissioner's letter of February 2017. In particular, the instructions to the 2008-08 bulletin state explicitly, under the section titled "Deemer Provision," that "[t]his section does not apply ... to any filings that are effective on approval."[6] If that is the case, it is clear that the proper route for Genworth would have been to exhaust its administrative remedies and appeal the commissioner's decision to the Supreme Judicial Court. G. L. c. 175, § 108 (2) (a ).
"We review questions of statutory interpretation de novo.... [However, w]e give substantial deference to a reasonable interpretation *396 of a statute by the administrative *1023 agency charged with its administration enforcement." Commerce Ins. Co. v. Commissioner of Ins., 447 Mass. 478, 481, 852 N.E.2d 1061 (2006). As the judge observed, "Such deference is particularly appropriate where the statute itself confers broad authority to the agency, which often has special expertise in the area, and where the legislature has not spoken with certainty on the topic in question. Thus, an administrative agency may use sub-regulatory guidance to 'fill in the details or clear up an ambiguity of an established policy' without resort to formal rulemaking as long as it does not contradict its enabling statute or preexisting regulations. Massachusetts Gen. Hosp. v. Rate Setting Comm'n, 371 Mass. 705, 707, 359 N.E.2d 41 (1977)."
Here, the division's 2008-08 bulletin mandating the use of SERFF as of January 1, 2009, merely provided the format for an insurer to request rate increases. The procedure did not conflict in any way with the relevant statutes but, rather, provided a method to implement them -- a method with which Genworth clearly was familiar, having filed its 2012 rate increase proposal through SERFF. "Where an agency's interpretation of a statute is reasonable, the court should not supplant it with its own judgment." Boston Retirement Bd. v. Contributory Retirement Appeal Bd., 441 Mass. 78, 82, 803 N.E.2d 325 (2004), quoting Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375, 727 N.E.2d 1147 (2000). "We ordinarily accord an agency's interpretation of its own regulation[s] considerable deference. The party challenging an agency's interpretation of its own rules has a 'formidable burden' of showing that the interpretation is not rational" (citations omitted). Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 228, 928 N.E.2d 939 (2010).
It was not until the October 21, 2016, letters that Genworth amended its proposal in an attempt to opt in to the so-called deemer provision by specifying November 21, 2016, as the effective date of the rate increase. Genworth sent these letters via Federal Express and e-mail, and not through SERFF, as the 2008-08 bulletin required. For that reason, the letters did not trigger the deemer provision, and the requested rate increase did not become effective. Thereafter, the commissioner's explicit disapproval in February 2017 controlled. As noted, Genworth's recourse, which it did not pursue, would have been to appeal to the Supreme Judicial Court. G. L. c. 175, § 108 (2) (a ).
We are satisfied that the judge's view was correct here and that the subregulatory guidance provided by the 2008-08 bulletin was *397 an appropriate exercise of the commissioner's authority. As a result, Genworth has not carried its "formidable burden" of demonstrating that the commissioner's interpretation, and administration, of G. L. c. 175, §§ 108 and 193F, were incorrect and therefore not worthy of substantial deference. Ten Local Citizen Group, 457 Mass. at 228, 928 N.E.2d 939.
Judgment affirmed.

Genworth filed a complaint in Superior Court seeking a declaration of its right to implement the rate increases. The commissioner moved to dismiss the action; Genworth opposed the motion and filed a cross motion for summary judgment. The judge, treating the commissioner's motion to dismiss as a motion for summary judgment, and stating that she "rule[d] on the issues before [her] based on undisputed facts that go beyond the four corners of the [c]omplaint," allowed the commissioner's motion and entered judgment for the commissioner.

The 2008-08 bulletin "identifie[d] requirements and guidelines for the submission of form, rate and/or rule filings by all insurance carriers ... doing business in the Commonwealth of Massachusetts with regard to ... insured health benefit plans. These requirements and guidelines are intended to streamline the filing and review process of these products so that they can move to the marketplace as quickly as possible. The Division of Insurance's ... goal is to review all such filings and either to approve, disapprove, place on file, or reject them within 60 days."

The letters did refer to SERFF tracking numbers.

There is no dispute that the commissioner received the letters.

"The thirty-day period specified in [G. L. c. 175, § 108,] may be extended by the commissioner with respect to any form required to be filed with him by said [§ 108 ] for an additional thirty days by giving written notice of such extension to the company filing such form before the expiration of the thirty-day period specified in said [§ 108 ]. At the expiration of the thirty days specified in said [§ 108 ] or of any extension thereof in the manner provided in this section, the form so filed shall be deemed approved unless prior to the applicable period it has been affirmatively approved or disapproved in accordance with the provisions of said [§ 108 ], whichever is applicable. Approval of any such form by the commissioner during the thirty days specified in said [§ 108 ] or under any extension authorized by this section shall constitute a waiver of any unexpired portion of the period applicable to the filing." (Emphasis added.) G. L. c. 175, § 193F.

The deemer provision also provides, "If a filing is complete according to Bulletin 2008-08 and these instructions, and the Division has sent neither an Objection Letter nor a Disposition within the allowed timeframe, the Filing Company may deem the filing effective on the original Effective/Implementation Date Requested."