FRANCIS G. MACDONALD, JR. *vs.* COMMISSIONER OF THE
METROPOLITAN DISTRICT COMMISSION.

No. 91-P-1049.

Suffolk. September 11, 1992. - October 23, 1992.

Present: DREBEN, FINE, & IRELAND, JJ.

*Retirement. Police*, Retirement, Incapacity. *Public Employment*, Acciden-
tal disability retirement, Retirement.

Where a public employer applied to the State Board of Retirement for an
employee's accidental disability retirement under G. L. c. 32, § 7, and
thereafter a medical panel determined that, although the employee was
permanently disabled, the disability was not related to his employment,
the board appropriately offered the employee ordinary disability retire-
ment under G. L. c. 32, § 6, and it was not required to reinstate him in
his position. [459-461]

A public employee was not entitled to relief from a decision of the State
Board of Retirement on the ground that the board misinformed him as
to the proper avenue of review of its decision, where, even if the em-
ployee had proceeded properly in seeking the review to which he was
entitled in a District Court, such review would have been unavailing.
[461-462]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 27, 1987.

The case was heard by *Barbara J. Rouse*, J., on motions
for summary judgment.

*Gabriel O. Dumont, Jr.*, for the plaintiff.

*Thomas F. McKenna* for the defendant.

FINE, J. In this action the plaintiff, Francis G. MacDonald,
Jr., is seeking reinstatement to his former position as a Met-
ropolitan District Commission (MDC) police officer. The de-
fendant, the MDC commissioner, claims that he successfully
followed the procedures set forth in G. L. c. 32, § 16,[1] to

---

[1]General Laws c. 32, § 16, as appearing in St. 1982, c. 630, § 21, in
material part, provides as follows:

have MacDonald involuntarily retired. MacDonald claims that the State Board of Retirement (board) erred in allowing his voluntary retirement on the basis of ordinary disability alone where the commissioner had applied to the board, pursuant to statute, for his involuntary retirement for accidental disability. Ordinary disability retirement is less advantageous to MacDonald than accidental disability retirement would have been. A further complication arises from the fact that

"(1) *Involuntary Retirement and Right to a hearing*:

"(*a*) Any head of a department who is of the opinion that any member employed therein should be retired for superannuation, ordinary disability or accidental disability, in accordance with the provisions of section five, six, or seven, as the case may be, may file with the board on a prescribed form a written application for such retirement. Such application shall include a fair summary of the facts upon which such opinion is premised. The applicant shall forthwith deliver to such member by registered mail, with a return receipt requested, a true copy of such application, together with a brief statement of the options available to such member on his retirement and a statement of his right, if any, to request a hearing with regard to such retirement and of the right, if any, of review available to him, as provided for in this section, in case he is aggrieved by any action taken or decision of the board rendered or by failure of the board to act upon his request or to render a decision within the time specified in this subdivision. Upon such delivery to such member the head of the department, or one acting in his behalf, shall file with the board under the penalties of perjury a written notice of such delivery, including the date thereof.

"(*b*) Any member in service classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and completed fifteen or more years of creditable service, . . . may, within fifteen days of the receipt of his copy of such application, file with the board a written request for a private or public hearing upon such application. If no such request is so filed, the facts set forth in such application shall be deemed to be admitted by such member; otherwise such hearing shall be held not less than ten nor more than thirty days after the filing of the request. The board, after giving due notice, shall conduct such hearing in such manner and at such time or times as the best interests of all parties concerned may require. The board shall prepare and file with its clerk or secretary a certificate containing its findings and decision, copies of which shall be sent to the proper parties within fifteen days after completion of such hearing.

"(*c*) If the board finds that any member should be retired under the provisions of this subdivision, he shall receive the same retirement allowance as he would have received had the application been made by himself. If the board finds that such member should not be retired, he shall continue in his office or position without loss of compensation, subject to the provisions of sections one to twenty-eight, inclusive, as though no such application had been made."

the board misinformed MacDonald as to the proper avenue of review of its decision.[2] On cross motions for summary judgment, a Superior Court judge ruled in favor of the commissioner on both points. With considerable misgivings about the board's confusing and misleading communications to MacDonald,[3] we affirm.

The undisputed material facts presented to the judge were as follows. MacDonald became an MDC police officer on December 29, 1969. On January 31, 1986, the commissioner filed an application with the board stating, among other things, that MacDonald was permanently disabled from further service in that he was suffering from "a major mental disorder . . . bordering on a psychotic condition" and requesting his retirement for "accidental disability." In accordance with the requirements of G. L. c. 32, § 16(1)(a), MacDonald was provided with a copy of the application, which included a summary of the facts relied upon, as well as copies of statutes setting forth his procedural rights before the board and his right to judicial review in the District Court.

[2]General Laws c. 32, § 16(3)(a), provides as follows for review in the District Court:

"Any member . . . who is a veteran and has completed ten or more years of creditable service, and who is aggrieved by any action taken or decision of a board or the commissioner of public employee retirement rendered with reference to his involuntary retirement under the provisions of subdivision (1) . . . may, within thirty days after the certification of the decision of the board, bring a petition in the district court within the territorial jurisdiction in which he resides praying that such action and decision be reviewed by the court. After such notice as the court deems necessary, it shall review such action and decision, hear any and all evidence and determine whether such action was justified. If the court finds that such action was justified the decision of the board or the commissioner of public employee retirement shall be affirmed; otherwise it shall be reversed and of no effect. . . . The decision of the court shall be final."

[3]Errors were made by the board in prematurely "certifying" its decision before review by a regional medical panel, incorrectly notifying the employee that he could appeal that premature "certification" to the District Court, not referring to a "certification" in its notice to the employee of its final decision, misinforming MacDonald as to the proper avenue of review, and suggesting in the notice of its final decision that he had a choice whether to accept retirement for ordinary disability when the only choice was to accept such benefits or receive nothing.

At MacDonald's request, the board held a hearing on April 24, 1986. MacDonald presented no evidence to counter the commissioner's claims and, on June 5, 1986, the board issued a "certificate" to the effect that MacDonald met the requirements for retirement for accidental disability.[4] The "certificate" was premature, however, because there had been no review by a regional medical panel as required by G. L. c. 32, § 6(3)(*a*).[5] Such a review took place subsequently. The panel found unanimously that MacDonald was permanently disabled and unable, therefore, to perform the duties of a police officer. The panel also found, however, that the disability was not causally related to his police work.

On June 1, 1987, the board notified MacDonald in writing that it was required as a result of the decision of the panel to deny the request for accidental disability retirement. Noting, however, that MacDonald was found by both the panel and the board to be permanently disabled and that he was a veteran with at least ten years of creditable service, the letter informed him that he was entitled to ordinary disability retirement benefits. Forms to effectuate such a retirement were

---

[4]MacDonald was informed of his right to have the board's decision reviewed in the District Court. Since the certificate could not have reflected a final decision in the absence of review by a regional medical panel, as previously indicated, that information was erroneous.

[5]General Laws c. 32, § 6(3)(*a*), as appearing in St. 1987, c. 697, § 32, in material part, provides:

"No member shall be retired for a disability under the provisions of this section [ordinary disability] or section seven [accidental disability] unless he has been examined first by a regional medical panel and unless the physicians on such panel, after such examination, shall review the pertinent facts in the case, and such other written and oral evidence as the applicant and the employer may present to be reviewed in making a determination of the member's medical condition. No physician having previously examined the member, except as part of a prior disability medical panel, shall serve on the regional medical panel examining the member. At the conclusion of such examination, but in not more than sixty days, the panel shall certify to the board in writing whether such physicians on said panel find that such member is mentally or physically incapacitated for further duty and that such incapacity is likely to be permanent, and in any case involving a retirement under section seven, the panel physicians shall state further whether or not the disability is such as might be the natural and proximate result of the accident or hazard undergone on account of which retirement is claimed under said section seven."

enclosed. Finally, the letter informed MacDonald that if he were aggrieved by the board's decision he could appeal to the Contributory Retirement Appeal Board (CRAB) within fifteen days. That information was erroneous. Pursuant to G. L. c. 32, § 16(3), any appeal would be to the District Court. See *Bagley* v. *Contributory Retirement Appeal Bd.*, 397 Mass. 255, 258 (1986); *Campana* v. *Directors of Mass. Hous. Fin. Agency*, 399 Mass. 492, 496 n.12 (1987).

MacDonald did not fill out the ordinary disability retirement forms. Instead, he filed an appeal of the denial of the request for accidental disability retirement with CRAB. He neglected, however, to notify the commissioner of the appeal, and on November 1, 1990, without opposition from MacDonald, CRAB dismissed the appeal for want of prosecution. No appeal was ever taken to the District Court.

MacDonald contended, in support of his motion for summary judgment, that, because the board denied the request for accidental disability retirement, he had the right to be reinstated in his former position. He based that claim on a statement made by a representative of the board in the course of the hearing before the board and on the language of the statute. The judge reviewed the statutes and the procedural history of the case and concluded that, although errors were made by the board, MacDonald was not entitled to reinstatement.

1. *MacDonald's claim that he is entitled by statute to reinstatement.* We briefly summarize the statutory background of the dispute. Apart from "superannuation" retirements, there are two types of retirements for which a State employee may apply: "ordinary disability" under G. L. c. 32, § 6; and "accidental disability" under G. L. c. 32, § 7. The requirement for favorable regional medical panel review as a prerequisite for either type of retirement is set forth in G. L. c. 32, § 6(3)(*a*), and the section specially requires a determination for a § 7 retirement that the disability "might be the natural and proximate result of the accident or hazard undergone" in the performance of his duties. See note 5, *supra*.

In G. L. c. 32, § 16, the Legislature provided a mechanism by which a head of a department may seek the *involuntary* retirement of a State employee. To do so, according to § 16 (1)(*a*), he "may file with the board on a prescribed form a written application for such retirement." Certain employees, of whom MacDonald was one, have the right in the event of such an application to a hearing before the board. The board may grant the department head's request for the employee's involuntary retirement. However, according to the language principally relied upon by MacDonald in G. L. c. 32, § 16(1)(*c*), "[i]f the board finds that [the employee] should not be retired, he shall continue in his office or position without loss of compensation . . . as though no such application had been made."

The commissioner filed an application specifically for MacDonald's accidental disability retirement. MacDonald contends that, under the statutes, that application could result in one of two alternatives: his accidental disability retirement or his reinstatement. To require MacDonald's retirement for an ordinary disability, MacDonald contends, a new involuntary retirement application would be necessary.

We think that is an incorrect interpretation of G. L. c. 32, § 16(1)(*c*). It is true that G. L. c. 32, § 16(1)(*a*), requires the commissioner to choose between the two types of retirement when filing his application. However, the commissioner, through his application, was necessarily seeking a determination from the board *both* that MacDonald was permanently disabled and that the disability was causally related to his work. By choosing an application for accidental disability retirement, which would have afforded MacDonald a more generous pension than ordinary disability retirement, the commissioner sought to benefit MacDonald. The underlying assumption, however, was that the commissioner had determined that MacDonald could no longer function as a police officer because of his permanent disability. It would have been unreasonable for MacDonald to have assumed, as he stated he did, that if he should be found to be permanently disabled, but not as a result of his MDC police work, that he

could resume his employment. The board having decided, after the opportunity for a hearing on the issue, that an employee is permanently disabled, it would be wasteful and irrational to require a department head to reapply to the board for the employee's involuntary retirement on the basis of ordinary disability. Thus, it is not surprising that G. L. c. 32, § 16(1)(*c*), provides for automatic reinstatement after a board decision *only* if the board finds the employee should not be retired. There was no finding by the board that MacDonald should not be retired. Neither the logic of the statutory scheme, nor the specific language of G. L. c. 32, § 16 (1)(*c*), supports MacDonald's claim of entitlement to reinstatement.

Nor were any of the statements made at the hearing[6] inconsistent with our analysis of the statutes or sufficient to create a reasonable belief on MacDonald's part that denial of accidental disability retirement would have resulted in his reinstatement. To the extent that the meaning of the statement relied upon is comprehensible, it suggests that if MacDonald should be found to be *not* disabled, "he is still Officer MacDonald." That statement would be consistent with the interpretation of the statute which we adopt.

2. *The consequence of the board's misinformation about the proper avenue for review.* The board, through its executive secretary, notified MacDonald by letter of its decision that he was permanently disabled but not entitled to acciden-

---

[6]MacDonald relies on the following discussion:

"MR. CALLAHAN: If this were cut and dried, and not to assume that we had reached any conclusions, because the Board hasn't, but if there were no questions in this, then Mr. MacDonald would have voluntarily put in for disability and there would be no hearing at all, so it is our determination, the Board's, that is, to ascertain whether the Metropolitan District Commission, through the Commissioner, is doing the proper thing by putting in an involuntary retirement for accidental disability for Officer MacDonald. If we, the Board that is, finds that the individual should go ahead with that, we still need his cooperation. If the medical panel found that he is not totally and permanently disabled, he is still Officer MacDonald, still have to take another step. Nothing final about our decision, unless everything falls into place. The doctors say yes, he is incompetent or incapable of performing the duties of a police officer, if it gets to that point.

"MR. KAPLAN: And it was causally related."

tal disability retirement. In the same letter he was offered an ordinary disability retirement. That decision was reviewable in the District Court within thirty days of the "certification." We assume the letter was made on the basis of a "certification" issued by the board in the regular course of its proceedings although the letter does not expressly so state. No such appeal was filed in the District Court. Instead, based on information contained in the decision letter from the board, MacDonald took an appeal to CRAB. The board's mistake was inexplicable and serious, and we assume MacDonald relied upon it. Nevertheless, we conclude that the error does not affect the rights of the parties.[7]

A timely appeal to the District Court would not have provided MacDonald with any relief. Absent a favorable decision from the regional medical review panel, he could establish no right to accidental disability retirement. On the issue of his disability, he had the opportunity at his hearing before the board and also before the regional medical review panel to challenge the commissioner's claim that he was permanently disabled by offering evidence that he was not disabled. He offered none, however, while substantial evidence that he *was* disabled was offered by the commissioner. Although he presented affidavits to the Superior Court judge in support of his motion for summary judgment to the effect that he was not disabled, that evidence, never presented to the board or the medical review panel, would not have been admissible in any district court review to determine whether the board's decision as to his disability was justified.[8]

---

[7]Whatever mistake the board may have made is not attributable to the commissioner, and, regardless, an estoppel argument against the commissioner has never been advanced. Indeed, at the time the involuntary retirement application was filed, the commissioner correctly informed MacDonald of his appeal rights. Moreover, had MacDonald notified the commissioner of his appeal to CRAB, or named the commissioner as a party, the error could have been timely rectified.

[8]The language is not clear as to what the scope of review is in the District Court under G. L. c. 32, § 16(3). The issue was not briefed by the parties. At oral argument, upon inquiry from the court, both parties stated that the review would be one on the administrative record to determine whether the decision was based on substantial evidence and not a "de

Because MacDonald is not entitled to reinstatement as an MDC police officer, the commissioner's motion for summary judgment was properly allowed. Although the board is not a party in this case, it is clear that MacDonald is entitled to ordinary disability retirement benefits, effective retroactively. He was paid his full salary for some portion of the period between the date of the commissioner's application and the date judgment was entered in the Superior Court.[9] Exactly what amount he is presently due by way of retroactive retirement benefits, and what rights the commissioner may have against the board with respect to salary payments made to MacDonald, will have to be worked out among MacDonald, the commissioner, and the board.

Accordingly, we order that the judgment be affirmed and that, if no agreement is reached within thirty days of the re-

---

novo" review. The language of the statute with respect to the scope of review is less than clear. Subsection (3) states that the court is to "review such action and decision, hear any and all evidence and determine whether such action was justified." See, however, the discussion in *Sherman* v. *Rent Control Bd. of Brookline*, 367 Mass. 1, 9, 12 (1975). As in the present case, the language defining the scope of review in that case suggested that "de novo" review might have been intended. Concluding that "de novo" review was not intended, the court indicated that, in determining the nature of review in such circumstances, it is important to consider "functional considerations," in particular the right to an evidentiary hearing before the administrative agency. See also *School Comm. of Brockton* v. *Teachers' Retirement Bd.*, 393 Mass. 256, 262-263 (1984) (the omission of the term "de novo" suggests that the Legislature did *not* intend the reviewing process to involve fact-finding). Here MacDonald had the right to an adjudicatory hearing before the board, and he participated in such a hearing. The reference to "evidence" in G. L. c. 32, § 16(3), may refer only to evidence of what occurred in the proceedings before the board. In any event, appraising the total process in context, we conclude that new evidence would not have been allowed in the District Court.

[9] On November 6, 1986, the commissioner notified MacDonald that, having failed to return the executed retirement documents to the board, he would be removed from the payroll on November 8, 1986. Shortly thereafter, he was removed. We do not think it is necessary for us to decide the propriety of that action or the consequence of MacDonald's failure to seek timely review of it pursuant to G. L. c. 32, § 16. On January 6, 1988, a preliminary injunction was entered reinstating him, with full pay, pending resolution of the instant Superior Court action. The preliminary injunction remained in effect until judgment was entered in the Superior Court on June 3, 1991.

script in this case, the matter shall stand for further proceedings in the Superior Court to which the board shall be made a party.

*So ordered.*