TERESA DAMIANO *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD.

No. 07-P-520.

Suffolk. April 4, 2008. - July 23, 2008.

Present: CYPHER, GRASSO, & SIKORA, JJ.

*Public Employment,* Accidental disability retirement. *Contributory Retirement Appeal Board.*

A civilian 911 dispatcher was not entitled to accidental disability retirement benefits under G. L. c. 32, § 7(1), where she sustained injuries as a result of ill-advised and unanticipated horseplay by a fellow employee, rather than while actually engaged in the performance of her job duties. [261-265]

CIVIL ACTION commenced in the Superior Court Department on October 27, 2005.

The case was heard by *Janet L. Sanders,* J., on a motion for judgment on the pleadings.

*Gregory F. Galvin* for the defendant.

*Andrew D. Nebenzahl* (*Aimee M. Goulding* with him) for the plaintiff.

GRASSO, J. We consider once again the strict causation requirement that must be met in order for public employees to obtain accidental disability retirement benefits under G. L. c. 32, § 7(1).[1] See *Richard* v. *Retirement Bd. of Worcester,* 431 Mass. 163, 167 (2000). While working as a 911 dispatcher for the city of Brockton police department, Teresa Damiano was injured in a fall due to the horseplay of a fellow employee. Damiano

---

[1] In pertinent part, G. L. c. 32, § 7(1), as amended through St. 1996, c. 306, § 14, provides accidental disability retirement benefits to a member of a public retirement system "who is unable to perform the essential duties of his job [before attaining the maximum age for his retirement group] by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time . . . ."

injured her right wrist and elbow and could not return to work. At the time the horseplay began, Damiano had just stood up at her desk with the intention of going to the ladies' room and then to a supply room to obtain additional copies of forms required for her job. Damiano requested accidental disability retirement benefits, alleging that her wrist and elbow injuries were incurred as a result of and in the performance of her duties and rendered her permanently disabled.

The retirement board of Brockton (board) denied Damiano's request for accidental disability retirement benefits on the basis that Damiano's injury did not occur "while in the performance of her duties," where she was injured when she stood up from her desk intending to go to the ladies' room. See G. L. c. 32, § 7(1). In reliance on *Namvar* v. *Contributory Retirement Appeal Bd.*, 422 Mass. 1004, 1005 (1996), and *Richard* v. *Retirement Bd. of Worcester, supra,* the Contributory Retirement Appeal Board (CRAB) upheld the board's decision. On appeal to the Superior Court, a judge vacated CRAB's decision, reasoning that Damiano's state of mind did not negate the fact that she had been injured while standing at her desk.

While we agree with the Superior Court judge that Damiano's subjective intent does not control her eligibility for accidental disability retirement benefits, we conclude that CRAB did not err in denying Damiano accidental disability benefits on the basis that her injury was not sustained "while in the performance of her duties." See *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 (1996) (if supported by substantial evidence and not legally erroneous, CRAB decision must be affirmed).

1. *Background.* In addition to answering 911 calls, Damiano's job as a civilian 911 police dispatcher also required her to receive calls from police officers who were calling in sick. Damiano recorded the officers' information by hand on call slips that she obtained periodically from a supply room. At approximately 9:00 A.M. on August 31, 2002, almost one hour into her shift, Damiano realized that she needed more call slips. She stood up from her desk, intending to go first to the ladies' room and then to the supply room to pick up supplies.

As Damiano stood in front of her desk and computer, a police

officer approached her from behind and, in an ill advised attempt at horseplay, placed her in a headlock. The officer pulled Damiano away from her desk and about eight feet across a break room where their feet became entangled and they fell against a wall and then to the floor. Damiano injured her wrist and, more severely, her elbow, such that she never returned to work.[2]

2. *Discussion.* Judicial review of a CRAB decision under G. L. c. 30A, § 14, is narrow. We are not called upon to determine whether the CRAB decision is based on the "weight of the evidence," nor may we substitute our judgment for that of CRAB. *Lisbon* v. *Contributory Retirement Appeal Bd., supra* at 252 n.6. A court may not set aside a CRAB decision unless the decision is legally erroneous or not supported by substantial evidence. *Id.* at 257.

To be eligible for accidental disability retirement benefits, Damiano must be unable to perform the essential duties of her job "by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, [her] duties." G. L. c. 32, § 7(1). The parties do not dispute the facts that give rise to Damiano's injury. Nor, for present purposes, do they contest that Damiano's injuries render her permanently unable to perform the essential duties of her job. Rather, the sole dispute is legal — whether Damiano's injury arose "while in the performance of" her duties as a civilian 911 dispatcher. Following the long line of cases that have consistently and strictly construed the requirements of the accidental disability retirement statute, CRAB concluded, and we agree, that Damiano's disability, if any, was not owing to "a personal injury sustained or a hazard undergone . . . while in the performance of her duties." See *Namvar* v. *Contributory Retirement Appeal Bd., supra* at 1005.

Damiano's entitlement to accidental disability retirement benefits under G. L. c. 32, § 7(1), is different altogether from her entitlement to benefits under the Workers' Compensation

[2]In light of the board's view that Damiano did not sustain her injuries in the performance of her duties, no regional medical panel was convened to determine whether she was unable to perform the essential duties of her job and whether that inability was likely to be permanent. See G. L. c. 32, § 7(1).

Act. See G. L. c. 152, § 26. It cannot be gainsaid that the entitlement of workers, both public and private, to workers' compensation benefits for injuries incurred on the job does not equate with the entitlement of a public employee to accidental disability retirement benefits for injuries incurred while in the performance of a job undertaken on behalf of the public. See *Hough* v. *Contributory Retirement Appeal Bd.*, 309 Mass. 534, 537-538 (1941) (disabling injury while employed by town insufficient by itself to entitle employee to statutory disability retirement benefits; employee must additionally prove causal connection between disability and accident occurring, or hazard encountered, while engaged in work duties); *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. at 255-259. As noted by the Supreme Judicial Court, the language of the accidental disability retirement statute is "much more restrictive" than that of the Workers' Compensation Act, which allows compensation to one receiving "a personal injury arising out of and in the course of his employment." G. L. c. 152, § 26. See *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 340 Mass. 109, 110-111 (1959).

The reason for this distinction is plain: because accidental disability retirement benefits are more generous than those available under ordinary retirement or under a nonservice- connected disability retirement, the Legislature has created a higher bar for their invocation. "[A]ccidental disability retirement under G. L. c. 32, § 7, [is] a form of retirement that provides higher benefits than ordinary (superannuation) and disability (nonservice-connected) retirement. General Laws c. 32, § 5 and § 6, respectively." *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 172, 173 (1997). See also *MacDonald* v. *Commissioner of the Metropolitan Dist. Commn.*, 33 Mass. App. Ct. 455, 460-461 (1992) (accidental disability retirement affords more generous pension than ordinary disability retirement). In consequence, G. L. c. 32, § 7, "requires not only that the injuries must result from one's duties but that they must also be sustained 'while in the performance' of these duties. The requirements are conjunctive." *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, *supra* at 111.

Damiano sustained her injuries "as a result of" her duties, at

least insofar as that term has been construed in the cases. Damiano's duties required her presence at the police station, and it was at the station that she was injured. See id. CRAB does not argue otherwise. "But [G. L. c. 32,] § 7[,] does not stop there." Ibid. The accidental disability retirement statute also requires that the employee be unable to perform the essential duties of her job by reason of a personal injury sustained or a hazard undergone "in the performance" of her duties. "The construction which [Damiano] would have us place on § 7 would give little or no importance to the second requirement." Ibid. The second, and conjunctive, statutory requirement necessitates that the claimed injury be sustained "in the line of duty" — that is, during the actual performance of the duties that the employee has undertaken to perform on behalf of the public.

Whether the disability complained of is owing to an injury sustained or a hazard undergone "while in the performance of" an employment duty is a factual inquiry particular to each case. A firefighter who is injured while rushing into a burning building, or fighting a fire, as well as the police officer who is injured while directing traffic, or apprehending a fleeing felon, can easily be understood to have been injured while "in the performance of" duties undertaken on behalf of the public. The same cannot be said of Damiano.

Damiano's disability is not owing to an injury sustained "while in the performance" of her duties as a civilian 911 dispatcher. Rather, her disability arises from an occurrence having nothing to do with the performance of her job duties, or even, with a hazard of the type reasonably to be expected in the performance of those duties. To say that Damiano sustained her injury "while in the performance" of her duties as a civilian 911 dispatcher when the injury was sustained as a result of ill-advised and unanticipated horseplay by a fellow employee would stretch the meaning of the statutory "while in the performance" requirement beyond permissible limits. Indeed, to do so would render insubstantial the requirement that there be a nexus between the claimant's injury and the actual performance of her job. See Richard v. Retirement Bd. of Worcester, 431 Mass. at 166 (statute requires that disabling injury occur while employee "actually engaged in the performance of an employment duty"). Compare

*Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 340 Mass. at 111 (recognizing distinction under Workers' Compensation Act between actual performance of work and something incidental to such work).

Damiano's claim fails not because her subjective intent was to go to the ladies' room at the time the officer grabbed her in a headlock. Nor does it fail even because of the sequence in which she anticipated visiting the ladies' room or retrieving the slips. Compare *Namvar* v. *Contributory Retirement Appeal Bd.,* 422 Mass. at 1005; *Richard* v. *Retirement Bd. of Worcester, supra.* Rather, her claim fails because her disability does not arise from an injury sustained, or a hazard undergone, *while in the performance of* her job. See *ibid.*

In sum, Damiano's injury, which had nothing to do with the performance of her duties as a 911 dispatcher, was not sustained while in the performance of those duties. She sustained her injuries on account of an intervening fortuity unrelated to her job and while not actually engaged in the performance of her job. While Damiano's injuries may entitle her to compensation under the Workers' Compensation Act, or perhaps to a nonservice-connected disability retirement, they do not entitle her to accidental disability retirement benefits for injuries sustained while in the performance of her duties.

We recognize the counterintuitive nature of a result where a public employee who is injured while at work may be entitled to workers' compensation benefits but not to accidental disability retirement benefits on account of the same injury. The disparity results from the fact that "the causation element [of the Workers' Compensation Act] is far less restrictive than that of the accidental disability retirement statute." *Richard* v. *Retirement Bd. of Worcester, supra* at 167. We recognize as well, as the Supreme Judicial Court has previously, that "the strict causation requirement of G. L. c. 32, § 7(1), can yield harsh results for employees who have suffered disabling injuries. However, . . . unless and until the Legislature amends the accidental disability retirement statute to relax this requirement, fairness demands that we apply the statute's terms consistently to all claimants." *Ibid.* "Consistency of treatment provides fairness among employees. If the Legislature wants to make a change

and to devote more public funds to accidental disability retirement benefits, it can do so." *Namvar* v. *Contributory Retirement Appeal Bd.*, *supra* at 1005.

Accordingly, we reverse the judgment entered below and a new judgment shall enter affirming CRAB's denial of accidental disability retirement benefits to Damiano.

*So ordered.*