RETIREMENT BOARD OF SALEM *VS.* CONTRIBUTORY
RETIREMENT APPEAL BOARD & another.[1]

Essex. December 1, 2008. - February 24, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Public Employment,* Accidental disability retirement. *Contributory Retirement Appeal Board. Administrative Law,* Judicial review. *Words,* "Personal injury."

The Contributory Retirement Appeal Board properly granted accidental disability retirement benefits to an employee who suffered a permanently disabling heart attack at home within one hour after experiencing emotional distress upon being told, while she was at work, that her employment position was going to be eliminated, where the heart attack resulted in a physical disability that could be construed as a personal injury [288-290] sustained as a result of her employment duties [290-291] within the meaning of G. L. c. 32, § 7 (1).

CIVIL ACTION commenced in the Superior Court Department on December 5, 2006.

The case was heard by *John T. Lu,* J., on a motion for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William J. Lundregan* for the plaintiff.

*Paul F. Applebaum* for Claire Cole.

BOTSFORD, J. Claire Cole (employee), an employee of the city of Salem for many years, suffered a permanently disabling heart attack at home within one hour after experiencing emotional distress on being told, while she was at work, that her employment position was going to be eliminated in the upcoming budget. A regional medical panel concluded that the heart attack was caused in part by the employee's emotional stress connected to

---

[1]Claire Cole. A suggestion of death was filed on behalf of Cole in the Superior Court on December 19, 2006.

learning the news of her impending job loss. At issue here is whether in such circumstances, the employee has been disabled by a "personal injury sustained . . . as a result of, and while in the performance of," her employment duties within the meaning of G. L. c. 32, § 7 (1), the accidental disability retirement statute. We conclude that the employee's disability qualifies under the statute. We therefore affirm the decision of the Contributory Retirement Appeal Board (CRAB), determining that the employee was entitled to accidental disability retirement benefits. Because the employee has since died, these benefits belong to her estate.

1. *Background.* The employee was born on April 3, 1940, and worked as an administrative assistant in the Salem department of public works beginning in 1975. Her duties included answering telephones, filing, typing, photocopying, and assisting with the payroll. She became a member of the contributory retirement system in 1976.

On March 22, 2000, at approximately 3:20 P.M., the employee's supervisor called her into his office and informed her that her position was being eliminated as of July 1, 2000. The employee became tearful and received permission from her supervisor to leave for the day. At approximately 4 P.M. that afternoon, after she had left the workplace, the employee developed retrosternal chest pain and went to the emergency room of Salem Hospital. The admitting physician found that she was suffering an acute myocardial infarction. The employee was admitted and remained hospitalized until March 27, 2000. In his report, the admitting physician stated that "[a]ccording to the patient, she was in her usual state of health until today when she developed retrosternal chest discomfort after finding out at her place of work that her services will be terminated as of July 4th, 2000."

The employee did not return to work. On March 30, 2000, she applied for accidental disability retirement benefits (benefits) pursuant to G. L. c. 32, § 7, thereby setting in motion what have turned out to be lengthy and tortuous administrative and judicial proceedings. A regional medical panel consisting of three physicians evaluated the employee and certified on September 30, 2000, that she was unable to perform the duties of her job, that her disability was likely to be permanent, and that her disability

was "the natural and proximate result of the personal injury sustained . . . on account of which retirement is claimed." The retirement board of Salem (board) approved the employee's application for benefits twice, but the Public Employee Retirement Administration Commission (PERAC) reversed the board and remanded the case for further review on both occasions. In 2001, on its third consideration of the employee's application, the board denied it, and in 2002, both an administrative magistrate of the division of administrative law appeals (DALA) and CRAB affirmed the denial.

In 2002, the employee appealed from CRAB's decision to the Superior Court. In 2003, a Superior Court judge, on cross motions for judgment on the pleadings, opined that "a heart attack, brought on by emotional stress resulting from a bona fide personnel action, [would constitute] a 'personal injury,' " allowed the employee's motion in part, and remanded the case "for further findings as to whether or not the [employee's] heart attack was caused by stress attendant on her receiving news of the elimination of her position, and whether or not the [employee] is currently disabled due to physical, rather than purely psychological, causes." In 2005, the medical panel answered both questions in the affirmative.

In 2006, after receipt of the medical panel's 2005 report, DALA affirmed the board's denial of benefits in its third (2001) decision, but CRAB reversed. CRAB found that the employee's "heart attack was caused by stress attendant on her receiving news of the elimination of her position" and that she "was disabled at that time due to physical rather than purely psychological causes." CRAB then ruled that the employee's communications with her supervisor about the termination of her job were made "in the course of her employment" and that her heart attack occurred "as a result of her employment within the meaning of [G. L. c.] 32, § 7." The board appealed to the Superior Court pursuant to G. L. c. 30A, § 14. In 2007, a different Superior Court judge denied the board's motion for judgment on the pleadings and affirmed CRAB's 2006 decision to grant the employee benefits. The board appeals from this decision. We transferred the case to this court on our own motion.

2. *Discussion.* "Judicial review of a CRAB decision under

G. L. c. 30A, § 14, is narrow. We are not called upon to determine whether the CRAB decision is based on the 'weight of the evidence,' nor may we substitute our judgment for that of CRAB. . . . A court may not set aside a CRAB decision unless the decision is legally erroneous or not supported by substantial evidence." *Damiano* v. *Contributory Retirement Appeal Bd.*, 72 Mass. App. Ct. 259, 261 (2008), quoting *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 252 n.6, 257 (1996). See *McCarthy* v. *Contributory Retirement Appeal Bd.*, 342 Mass. 45, 48-49 (1961). G. L. c. 30A, § 14 (7). We are required to give due weight to the agency's experience, technical competence, and specialized knowledge. *Id.*

General Laws c. 32, § 7 (1), provides in relevant part:

> "Any member . . . who is unable to perform the essential duties of his job [where] such inability is likely to be permanent before attaining the maximum age for his group *by reason of a personal injury sustained* or a hazard undergone *as a result of, and while in the performance of, his duties* . . . shall be retired for accidental disability" (emphasis added).

The board argues that the plaintiff is ineligible for benefits because she did not suffer the requisite "personal injury" or, in the alternative, because her injury was not sustained during the performance of her duties at work. We disagree.

a. *Personal injury.* The term "personal injury" is not defined in G. L. c. 32, § 7 (1), or elsewhere in the retirement statute. Decisions of this court and the Appeals Court, however, have consistently turned to the definition of "personal injury" in G. L. c. 152, the workers' compensation statute. See, e.g., *Adams* v. *Contributory Retirement Appeal Bd.*, 414 Mass. 360, 361 n.1 (1993); *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 482-483 (1985). In defining the term "personal injury," G. L. c. 152, § 1 (7A), provides, in relevant part: "No mental or emotional disability arising principally out of a bona fide, personnel action including a . . . termination . . . shall be deemed to be a personal injury within the meaning of this chapter." The board argues that the employee in this case did not sustain the requisite "personal injury" because she suffered only an emotional disability as a result of the personnel action at

issue, viz., the notification of her forthcoming termination. The board claims that the heart attack was not a "job-related physical injury," but merely a "physical sequellum [*sic*] . . . of her preexisting, work-related mental and emotional condition."

As the first Superior Court judge noted, however, the statutory language regarding the bona fide personnel exception to the definition of personal injury focuses not on the *cause* of a disability, but on its *nature*; only disabilities that are emotional or mental in nature are excluded. We conclude, as did the Superior Court judge and CRAB, that this personnel action exception does not bar the employee here from receiving benefits because the exception applies only to emotional or mental disabilities and the employee's heart attack, although caused by the emotional stress of hearing from her supervisor of her forthcoming termination, resulted in a *physical* disability. G. L. c. 32, § 7 (1). G. L. c. 152, § 1 (7A).

b. *Performance of work duties.* The board does not dispute that the conversation between the employee and her supervisor about her forthcoming termination caused her heart attack. The board argues, however, that the heart attack was not sustained during the performance of her work duties, as required by G. L. c. 32, § 7 (1), because her heart attack occurred after she had left work for the day.

We conclude that the heart attack was "sustained" during the employee's conversation with her supervisor in that the conversation caused the emotional stress which, within one hour, caused the heart attack. Cf. *Baruffaldi* v. *Contributory Retirement Appeal Bd.*, 337 Mass. 495 (1958) (city engineer awarded accidental death benefits under G. L. c. 32, § 9 [1], after bitter argument with contractor caused heart attack off site following day); *Robinson* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 634, 638 (1985) (if deceased employee's fatal heart attack, suffered after employee left place of employment, resulted from impact of physical or emotional stress sustained during on-site performance of work duty, plaintiff widow entitled to accidental death benefits under G. L. c. 32, § 9 [1]).[2]

---

[2]The accidental death benefits statute, G. L. c. 32, § 9 (1), and the accidental disability retirement benefits statute, G. L. c. 32, § 7 (1), both condition receipt of benefits on a showing that a personal injury was "sustained . . . as a result of, and while in the performance of, [work] duties."

At oral argument on this case, the board advanced a different claim, arguing that, regardless of whether the employee sustained her heart attack while she was physically at work, the conversation she had with her supervisor that led to the heart attack did not occur "while in the performance of [her] duties." G. L. c. 32, § 7. The board emphasizes that, while the workers' compensation statute provides for compensation to one who experiences "a personal injury arising out of and in the course of his employment" (G. L. c. 152, § 26), the accidental disability retirement benefits statute is much more restrictive, and provides benefits only for those who experience a personal injury not merely as a result of the performance of work duties, but *during* the performance of these duties as well. See *Namvar* v. *Contributory Retirement Appeal Bd.*, 422 Mass. 1004, 1004-1005 (1996); *Damiano* v. *Contributory Retirement Appeal Bd.*, 72 Mass. App. Ct. 259, 262 (2008). The board contends that this court has construed the phrase "the performance of [work] duties" in narrow terms that would not include meeting with a supervisor to discuss a forthcoming job termination.

We agree that benefits may permissibly be awarded only when a disabling injury is sustained during the performance of work duties and not merely as a result of being at work when injured.[3] We disagree, however, with the board's claim that the employee's injury was not sustained during the performance of a work duty. The employee was injured while she was responding to the request or direction of her supervisor, the head of her department, to speak to him in his office during the work day to discuss her employment status. Clearly her compliance with the supervisor's direction to speak with him about this subject qualifies as being actively engaged in the performance of her duties. Contrary to the board's argument, no change in the law is required to recognize this point.

---

[3]See, e.g., *Namvar* v. *Contributory Retirement Appeal Bd.*, 422 Mass. 1004, 1005 (1996); *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 340 Mass. 112, 113 (1959); *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 340 Mass. 109, 111 (1959); *Damiano* v. *Contributory Retirement Appeal Bd.*, 72 Mass. App. Ct. 259, 263 (2008). See also *Richard* v. *Retirement Bd. of Worcester*, 431 Mass. 163, 164-165 (2000).

3. *Conclusion.* The decision of CRAB, granting accidental disability retirement benefits to the employee, is affirmed.

*So ordered.*